LARUE *vs.* ROWLAND.

Books of account should only be received in evidence upon preliminary proof that they contain original entries, made by the party himself; that they are fairly kept; and that the party had no clerk, and had dealings with the person charged.

These are questions upon which evidence is to be addressed to the court, to enable it to determine whether the books of account shall be received as evidence at all.

So also fraudulent circumstances may be proved, for the purpose of rendering the books incompetent evidence.

A defendant, in order to establish a set-off, after making sufficient preliminary proof, offered in evidence a *day book* and a *ledger*, and upon inspection, it appeared that the entries in the day book were of a date several years anterior to the trial, and that the defendant had another day book, containing entries of a later date, in which the account with the plaintiff was continued. The ledger showed one item posted from this second day book, to the plaintiff's account. No excuse being given for not producing the second day book; *Held* that the other books were not competent evidence, to prove the set-off.

Books of account, to some extent, partake of the nature of documentary evidence. Hence all the books containing entries relating to an account, when relied upon as furnishing evidence to sustain the account, should be produced; in order that the other party may have the benefit of *all* the entries made therein.

Larue *v.* Rowland.

APPEAL from the Schoharie county court.   Larue sued Rowland before a justice of the peace for a quantity of manure sold and delivered to him.   The defendant pleaded the general issue, and gave notice of set-off.   Upon the trial, the plaintiff proved that the defendant had of him seven loads of manure, worth three shillings per load.   The defendant, who is a physician, offered an account against the plaintiff, as a set-off.   He proved by *Charles Knox* that he had dealt with the defendant, and settled with him from his books, and found the account upon the books all right.   The witness identified the defendant's day book A, then in court, as the book he looked over when he settled.   *Mary Strain* testified that the defendant had *doctored* the plaintiff's son, *Wardell*, when he had fits, about two years previous; that he also attended the plaintiff's wife when Wardell was born.   Wardell was six years old the fall previous to the trial.   *Mary Shont* testified that the defendant attended the plaintiff's daughter when she had the scarlet fever, about three years before the trial.   *Jacob Shont* testified that, about five or six years previous, he had settled an account with the defendant, from his books, and found it all correct.   He thought the books in court were the same he settled from.   *Spencer Foster* testified that the defendant had performed medical services for his family; that he had settled with him the fall before, from the books in court, and found all correct.

The defendant then offered in evidence his *day book A,* which was filled up with accounts; also a *ledger,* in which charges against the plaintiff to the amount of $18,25 were posted from day book A.   The last of these charges was made in 1841.   In the ledger there was also a charge of $2,50, posted from *day book B.*   The defendant stated that this was a mistake; that he did not claim for any charge on *day book B;* that he had no other account books *than those in court.*   The plaintiff then objected to the introduction of the books as evidence, on the ground that they were not all the account books of the defendant; that *day book B,* referred to in the ledger, should be produced *as it would show credits to the plaintiff.*   The objection was overruled.   The plaintiff then recalled *Spencer Foster* and

Larue v. Rowland.

proved by him, that when he settled with the defendant his accounts were in another day book, which was not then in court; *that the defendant had two day books.* The plaintiff again asked the justice to reject the books, and not permit them to go to the jury as evidence. The motion was denied. The plaintiff gave in evidence a receipt, signed by the defendant, as follows: "Received of N. M. Larue one dollar in full of all demands up to this date. Sloansville, August 25, 1842. Amos Rowland." The jury found a verdict in favor of the defendant for $9,63, for which amount, with $3,96 costs, the justice rendered judgment. The Schoharie county court affirmed the judgment. From that judgment the plaintiff appealed, pursuant to the provisions of the code.

*J. H. Ramsay,* for the plaintiff.

*C. G. Clark,* for the defendant.

*By the Court,* HARRIS, J.   Books of account are received in evidence, only upon the presumption that no other proof exists. They are justly regarded as the weakest and most suspicious kind of evidence. The admission of them at all, is a violation of one of the first principles of the law of evidence, which is, that a party shall not himself make evidence in his own favor. The practice of admitting such evidence is, I believe, universally adopted. It is said that it has its origin in a kind of "moral necessity," and that such is the general course of business that no proof could be furnished of the frequent small transactions between men, without resorting to the entries which they themselves have made, in the form of accounts. The practice can only be justified upon the ground that, without such evidence, there would, in many cases, be a total failure of proof. It may be added, that it has been often doubted, by those too, who have had the best opportunities for observing the facilities for frauds, which this loose species of evidence affords, and the abuses which, in inferior courts, have been perpetrated under it, whether it would not have been more wise, to have excluded such evi-

Larue *v.* Rowland.

dence altogether. At the very best, it is but presumptive evidence, and that, too, of the lowest grade. It should always be received with extreme caution, and be subjected to the strictest scrutiny. The common law did reject it altogether. In countries where the civil law prevails, books of account are generally received in evidence, in connection with the oath of the party. But to make them evidence at all, the books must have been kept in a manner so cautious as, in a great degree, to furnish a guarantee against abuse. In many, perhaps most of the United States, what is called the suppletory oath of the party is required. In this state that practice has not obtained ; and I agree with Justice Cowen, that " frail as such proofs must be, the law can hardly be censured for thinking they would be but little fortified, by the suppletory oath of an interested and excited party." (*See Sickles* v. *Mather,* 20 *Wend.* 72. *Cowen & Hill's Notes,* 682.)

Notwithstanding what I have said, I admit the necessity which receives this species of evidence. In a country like ours, where the artisan and the tradesman are compelled, by the usages which have obtained, to give credits to their customers, and yet in very many instances, can not afford to keep clerks, the customary entries, made in the usual course of business, must, to prevent greater injustice, and when free from all suspicion of dishonesty and unfairness, be received as evidence of the transactions to which they relate. All I claim is, that the true character of the evidence should be appreciated. The general rules which experience has suggested, as safeguards against dishonest practices, are, that the evidence should only be received, upon preliminary proof that the books offered contain original entries, made by the party himself; that they are fairly kept ; that the party had no clerk, and had dealings with the person charged. These are questions upon which evidence is to be addressed to the court, to enable it to determine whether the books of account shall be received as evidence at all. So also, fraudulent circumstances may be proved, for the purpose of rendering the evidence incompetent. Thus, it may be shown that material and gross alterations have been made, or that entries have.

been made *post litem motam,* and even that they were not made at or near the time of the transaction. In short, any thing may be proved which will show that the books are unworthy of credit; and if the proof sustains the objection, it is the duty of the court to reject the evidence as incompetent, and leave the party to his common law proof. (*Coggswell* v. *Dolliver,* 2 *Mass. Rep.* 217; *Eastman* v. *Moulton,* 3 *New Hamp. Rep.* 156.)

In the light of these principles, let us advert to the facts of the case under consideration. The defendant, to establish his set-off, offered his books of account as evidence. He gave, what, in the first instance, should perhaps be considered sufficient preliminary proof. The books offered were a *day book* and a *ledger;* and upon inspection, it appeared, that the entries in the day book were of a date several years anterior to the time of the trial, and that the defendant had another book, containing entries of a later date, in which his account with the plaintiff was continued. The ledger showed one item posted from this second day book to the plaintiff's account. The plaintiff alledged that the second day book, if produced, would be found to contain credits varying the account in his favor. The defendant denied that he had such second day book, but, besides the evidence of the ledger itself, one of his own witnesses with whom he had settled an account from the very book, was recalled and proved its existence, beyond all question. Under these circumstances the justice was undoubtedly called upon to reject the books as incompetent. If the account had been paid or if the plaintiff was entitled to credits applicable to the account, they would have been most likely to have been found entered in the books at a later date than the charges. In *Prince* v. *Swett,* (2 *Mass. Rep.* 569,) a day book was offered in evidence to prove an account for goods sold and delivered. When produced it appeared from the post marks upon it, that the account had been posted to a ledger. The court held, that it was necessary to produce the ledger, as well as the day book, that the other party might have the advantage of any items entered in it to his credit. The existence of the second day book in this

case was proved. The defendant did not pretend that he was unable to produce it, and assigned no reason why he did not produce it. It is a just rule of evidence that when a demand is made upon a party to produce his books of original entries and he refuses, without assigning a satisfactory reason for it, every thing is to be presumed against him, which the nature of the transaction will warrant. I can not see what is to exempt the defendant from the operation of this rule. He was required to produce a book of original entries. He refused, and gave no excuse for it. The book might well have contained credits to the plaintiff, sufficient to balance the account. There is some reason to believe, from what occurred, upon the trial, that it did, in fact, contain such credits. The justice, therefore, erred in allowing the books to go to the jury, as evidence to establish the defendant's account against the plaintiff. Besides, I think the evidence should have been excluded upon another principle. Books of account, to some extent, partake of the nature of documentary evidence, in respect to which it is a cardinal rule that part of an instrument can not be received while a part is withheld. The whole must be taken together. So, I think it is with regard to books of account. All the books containing entries relating to the account, when relied upon as furnishing evidence to sustain the account, should be produced. A party should no more be allowed to withhold a part of the account while he avails himself of another part, as evidence in his favor, than a part only of a deed or other document should be received in evidence. The fact that the account ran into two books, can not vary the principle. It is the same, in legal effect, as though the defendant had insisted upon sealing up one-half of the day book he offered, and having the remaining half received as evidence in his favor. The only proper or safe rule to apply in such a case, is, that if a party in, derogation of the fundamental and salutary rule of evidence, that one shall not be permitted to make testimony for himself, seeks to introduce his own entries, in his own books, as evidence of the dealings to which they relate, he shall, at least, allow the party to be affected by such evidence, the benefit of *all* the entries he has

made. Common fairness demands it. Upon this ground, also, the books should have been excluded. For these reasons, I think the judgment below should be reversed.

Judgment reversed.

SAME TERM.    *Before the same Justices.*