## VEITHS *v.* HAGGE.

While objections to the competency of a witness should, in general, be taken before he is examined in chief, yet they may be made at any time during the trial, if made as soon as the interest or incompetency of the witness is discovered.

If the incompetency of a witness is first discovered during the examination in chief, it is not too late then to object to him on the ground of incompetency.

The fact that a bond for the delivery of property attached in the suit, is filed with the papers in a cause, upon which a witness is surety, is not such notice of the interest of the witness as will preclude the party against whom he is called, from objecting to the witness on the ground of incompetency, after he has been sworn, and examined in chief, in part.

Where it is the custom of a creditor, known and acquiesced in by the debtor, to charge interest on accounts, after a certain time, or where such is the uniform usage of the trade, such facts, if proved, are evidence of an agreement, and interest will be allowed.

Where in an action on account for goods sold and delivered, the party claimed interest on the account from the end of the year during which the same accrued, and offered to prove, that by the usage and mode of dealing between him and his customers, having open accounts, all such accounts were considered due at the end of the year, and interest on the same from that time, was charged to his customers, and that such custom was known to the defendant, which evidence was rejected by the court; *Held,* That the evidence was admissible; and that it should have been left to the jury to determine, whether the facts shown amounted to an agreement between the parties, that the account was to be considered due at the end of the year, and that interest was to be charged after that time.

A charge for "money paid" or "money lent" in an account, cannot be proved by the books of accounts of the party making the charge.

Veiths v. Hagge.

The paying out or loaning of money, is not usually the subject of a charge in an account; and charges of that nature are not such as are made in the ordinary course of business by one party against another.

Where in an action on an account for goods sold and delivered, which contained charges of money lent, the party proved by a witness, that the defendant was a customer at the store of the plaintiff, and was in the habit of borrowing, from time to time, sums of money from the plaintiff, which were charged to the defendant in his account; *Held*, That while the evidence might show a course of business between the parties, it was not sufficient to constitute the plaintiff's books of account legitimate evidence of money paid or lent to the defendant.

Section 2406 of the Code has not made any such distinction, as that small sums of money may be proved by a party's books of account, but that large sums shall not be so proved.

But the books may more readily be admitted as sufficient to prove the payment of money of small than a large amount, and it may be more readily concluded that the loan or payment of small sums of money, by a retail trader to his customers, and charged in their accounts, was more nearly in the ordinary course of business, than the loan or payment of large sums; and if the jury should be of opinion, that small money charges were legitimately made in the ordinary course of business, they may allow the same.

Where a party against whom entries are made in books of account, or against whom an account is rendered, relies upon or seeks to avail himself of credits entered in his favor, he will not be allowed to do so, without, at the same time, making the whole account evidence against himself.

A party seeking to have the benefit of an admission or declaration of another, must take the whole admission or declaration together, and will not be allowed to select what makes in his favor, and exclude that which makes against him.

Where in an action on an account, which contained charges for money lent, and in which certain credits were given to the defendant, the defendant offered no evidence of payments made by him, and the plaintiff asked the court to instruct the jury as follows: "That if the defendant claimed the benefit of the credits given him by the plaintiff, on his account, on the books of account of the plaintiff, he thereby made said books and accounts evidence to go to the jury, and to be considered by them, in support of all the items charged against the defendant therein, including the cash items, subject to be rebutted as to any of such items by counter evideence on the part of the defendant; and that the defendant could not claim the benefit of the items credited to him on said account, and at the same time, exclude from the consideration of the jury any of the items charged against him in the same account;" *Held*, That the court erred in refusing to give the instruction.

Where in an action commenced by attachment, on the ground that the de-

Veiths v. Hagge.

fendant had property, &c., not exempt from execution, which he refused to give, either in payment or security of the debt, the defendant claimed damages of the plaintiff, by way of set-off, for the wrongful suing out of the attachment, denying the causes alleged in the affidavit for the writ, and averring that the attachment was wrongfully sued out; and where on the trial, the plaintiff, offered no evidence to prove that the defendant had property, &c., or that payment or security had ever been demanded, and refused by the defendant, and thereupon the defendant asked the court to instruct the jury, "that the burden of proof was on the plaintiff, under the issue joined, to show such demand and refusal," which instruction the court refused to give; *Held*, That the instruction was properly refused.

In an action on an attachment bond, for wrongfully suing out an attachment, the burden of proof is upon the plaintiff, to show that the writ was wrongfully sued out; and where the attachment was issued on the ground that the defendant in the writ had property, &c., which he refused to give either in payment or security of the debt, and he relies upon the fact that no demand was ever made upon him for such payment or security, and that there was, consequently, no refusal, he must prove it.

The true test to determine where is the burden of proof, is to consider which party would be entitled to the verdict, if no evidence were offered on either side; for the burden of proof lies on the party against whom, in such case, the verdict ought to be given.

A party injured by the wrongful suing out of a writ of attachment, has no other remedy for his injury, than an action on the attachment bond, unless the case is such that an action of trespass would lie.

The law has made no provision for any issue or proceeding to try the truth of the facts averred in a petition or affidavit for a writ of attachment. nor for the dissolution of the writ, upon its being ascertained that the said averments are not true, and that the writ was wrongfully issued, even though the same should be made to appear from the verdict of a jury.

Where in an action commenced by attachment, in which the defendant claimed damages of the plaintiff, by way of cross-action, for the wrongful suing out of the attachment, the jury found for the plaintiff on his cause of action, and rendered a special verdict, that the attachment was wrongfully sued out, assessing the damages of the defendant therefor, at ten dollars; and where the defendant then moved the court for a judgment on said special verdict, quashing the writ of attachment, which motion was refused, and judgment rendered for the plaintiff. *Held*, That the motion to quash the attachment was properly overruled.

*Appeal from the Scott District Court.*

SATURDAY, APRIL 9.

THIS WAS an action upon a promissory note for $1,050, commenced by attachment, on the ground that the defendant had property, goods, or money, lands and tenements, or choses in action, not exempt from execution, which he refused to give either in payment or security of the said debt. An attachment was duly issued, and levied on certain goods, wares and merchandize in the store of the defendant, who executed a bond for the delivery of the property or the payment of its estimated value, within twenty days after the rendition of judgment in said suit. This bond was signed by one William Stolley, as one of the sureties of the defendant.

The answer of the defendant admitted the execution of the note, but denied that he was indebted to the plaintiff, and claimed, as a set-off, the sum of $567,42, for goods sold and delivered, money lent, &c., *with interest*—an account of which was attached to the answer. The answer, also, claimed a sum of $2,000 as damages, for the wrongful suing out of the said attachment, averring that the said defendant, at the time of suing out said writ, had no property, goods or money, lands and tenements, or choses in action, not exempt from execution, which he refused to give in payment or security, for any debt justly due from him to the plaintiff; that there was due from the defendant to the plaintiff, at the time of commencing the action, no more than the balance remaining after deducting from the amount of the note, the amount due from the plaintiff to the defendant, on the accounts set out in the answer; that the defendant never refused to pay said balance to the plaintiff, but was always, before the commencement of this action, ready and willing, and repeatedly offered to pay the same to the plaintiff; and that the said attachment was wrongfully sued out by the said plaintiff. Among the items charged in the accounts attached to the answer, were the following: "Cash, $100." "To check to Chubb, Bro., Barrow & Co., $146,00;" and in the same accounts, the plaintiff was credited with various sums.

Veiths v. Hagge.

The replication denied that the plaintiff was indebted to the defendant in the sum claimed on the said accounts; admitted the suing out of the attachment, and the execution of the attachment bond; and denied that the attachment was wrongfully issued, or that defendant was damaged thereby.

Upon the trial of the cause, before a jury, the defendant to sustain the issues on his part, called as a witness the said William Stolley, who was sworn in chief, and examined in part on behalf of defendant, without any objection on the part of the plaintiff. While the examination in chief of said witness was in progress, and unfinished, the attorney for the plaintiff interposed, and put to the said witness the following question: "Have you any interest in this suit?"—to which question objection was made, as improper at that stage of the proceeding, but the objection was overruled, and the witness permitted to answer, to which ruling the defendant excepted. In answer to the interrogatory, the witness stated: "I do not know that I have any interest, except that I am on the delivery bond to the sheriff." The delivery bond was filed with, and attached to, the writ of attachment, as a part of the sheriff's return. The attorney for the plaintiff thereupon objected to the further examination of the witness, on the ground that he was incompetent, by reason of interest, which objection was sustained, and the witness excluded —to which ruling the defendant excepted.

In the further progress of the cause, the defendant, in order to sustain the charges for interest contained in the accounts, having proved that he kept a retail store, at which the plaintiff was a customer, and bought goods from time to time, on credit, and had a running account at said store, in which said purchases were charged to him—which account was the one in suit—offered to prove that by the uniform usage and mode of dealing between defendant and his customers, having running accounts at said store, all said accounts were considered as due at the end of the year, and that interest was charged by the defendant, on the unpaid balances of the said accounts from the said end of the year;

and that said usage and mode of dealing was known to the plaintiff at the time when he was a customer of the defendant. This evidence was objected to by the plaintiff, and the objection being sustained, the defendant excepted.

The defendant, in order to prove the accounts against the plaintiff, produced in evidence his books of account, having first introduced the necessary preliminary evidence in verification of said books; and also called as a witness one Heinrich Jensen, who testified that he was employed as a clerk in the store of defendant, from the first of March, 1855, to the first of March, 1856, and that plaintiff, during that time, was a customer at said store, and was in the habit of borrowing sums of money from defendant, which were charged to him on the said books of account. The bill of exceptions then recites, that the defendant offered no evidence independent of said books, in support of the specific items of cash charged against the plaintiff in the accounts; and that the plaintiff offered no independent evidence on his part, to prove any payments made by him to the defendant, but relied, in order to establish the same, on the credits given him for such payments, upon the accounts offered in set-off, and the said books of account.

The bill of exceptions further recites, that no evidence was offered by the plaintiff, to prove that the defendant, at the time of commencing the action, had any property not exempt from execution, which he had refused to give in payment or security of the plaintiff's claim, as alleged in the petition; nor was there any evidence produced that the plaintiff had ever demanded such payment or security, or that the defendant had ever refused to give the same.

The court instructed the jury as follows: "That cash, except in small items, to the amount of ten dollars, or thereabouts, which appear to have been furnished in the ordinary course of dealing between the parties, is not the subject of book account, and cannot be proved by the books of account alone. But to entitle the defendant to recover for such items, there must be other evidence than what the books furnish.

Veiths v. Hagge.

If there is evidence other than the books, that the money was loaned to the plaintiff, items of such a character the jury will allow."

To the giving of this instruction, the defendant excepted, and thereupon he asked the court to instruct the jury as follows: "That if the plaintiff claimed the benefit of the credits given on his account, on the books of account, and on the accounts set forth in the answer, he thereby made said books and accounts, evidence to go to the jury, and be considered by them, in support of all of the items charged against the plaintiff therein, including the cash items, subject to be rebutted as to any of such items, by counter evidence on the part of the plaintiff; and that the plaintiff could not claim the benefit of the items credited to him on said account, and at the same time, exclude from the consideration of the jury, any of the items charged against him in the same account."

This instruction the court declined to give, but instructed the jury as follows: "That the plaintiff would be entitled to all credits, and all acknowledgments of indebtedness to him, made upon the defendant's books, if he chose to avail himself of such credits. But that if, upon an examination of the debits and credits, and all the other evidence in the case, the jury believe that plaintiff delivered property to defendant, and defendant at the same time, paid over the amount, or a part of it, for which he purchased said property, and the purchase of the property and the payment for it, was one and the same transaction, the jury may balance one against the other. But where, on an examination of the books, and the other evidence in the case, there are cash items charged in the defendant's account against the plaintiff, exceeding ten dollars, which do not appear to have been made in payment of the credits, and there is no other evidence than the books, that said cash was delivered to, and received by, the plaintiff, then the jury will disallow such items." To the instruction thus given, and the refusal to give that asked by him, the defendant then excepted.

On the issue in relation to suing out the attachment, the defendant asked the court to instruct the jury as follows : "That the burden of proof was on the plaintiff, under the issue joined, to prove a demand of property in payment or security of the said debt, and a refusal on the part of said defendant." This instruction the court refused to give, and thereupon it instructed the jury as follows : "That the plaintiff having taken the course prescribed by law, to obtain an attachment, the jury must be satisfied that the defendant has established the fact that the attachment was wrongfully sued out—that is, that it was sued out unjustly, injuriously, tortuously, and in violation of right—before they can allow the defendant damages for the wrongful suing out of the same." To the giving of this instruction, and the refusal to give that asked by the defendant, he excepted.

The jury returned a verdict as follows : "We, the jurors, find a verdict for the plaintiff in the sum of $892,39. We likewise are of the opinion, that the attachment was wrongfully issued, and therefore think the defendant entitled to damages to the amount of ten dollars, to be deducted from the above sum ;" and thereupon the defendant moved that a judgment be rendered upon the verdict of the jury, that the writ of attachment be vacated and set aside, which motion was overruled, and judgment was rendered in favor of the plaintiff for the amount of the verdict, less the damages awarded to the defendant. The defendant appeals, assigning as error the various rulings of the court.

*J. N. Rogers,* for the appellant.

I.   The court erred in denying defendant's motion to quash the attachment.

1.   It being judicially ascertained by a verdict, on an issue regularly joined in the case, directly on the point, that the attachment was wrongfully sued out, it became the duty of the court to quash it. The court will not per-

Veiths v. Hagge.

mit the plaintiff to reap any advantage of his tortuous act. Otherwise, plaintiff would be allowed to "take advantage of his own wrong," and to abuse the process of law. The record will then show on its face, an attachment wrongfully sued out, and a judgment giving the full benefit of it to the wrongdoer; the damages being merely nominal. 2. The recovery of damages by defendant for the wrongful suing out of the attachment, is no answer to the motion to quash the attachment. The plaintiff cannot thus purchase a right to retain an attachment, wrongfully sued out. In contemplation of law, the damages are merely a remuneration to defendant for the injury he has already sustained, from the wrongful act of plaintiff in fraud of his rights. 3. If his property has been taken out of his possession under the attachment, he recovers his loss by reason of the detention, &c. Drake on Attachments, sections 170–184. If not so taken, (as in this case), he gets, ordinarily, but nominal damages. Such recovery confers on plaintiff no right to the attachment, nor to any future benefit from it. Parties cannot thus make merchandise of the process of law. The court has rights and duties in the matter. It is its duty to see that its process is not abused. It is against the whole policy of the law, to allow a party to retain, for any purpose, a writ wrongfully sued out. 3. When a merchant's stock of goods is attached, he must either give a delivery bond, or have his business broken up, and his credit ruined. According to the ruling in this case, his creditor can, in such case, subjecting himself to only nominal damages, sue out an attachment without any real grounds, compel defendant to give bonds, and obtain the full benefit of the bond, and of recourse against the sureties. 4. Other parties than defendant may be injuriously affected by refusal to quash attachment. It may enable a creditor to gain an unfair advantage over other creditors. Subsequent purchasers, incumbrancers, or lien-holders, may be prejudiced. Sureties on the delivery bond have a right to be protected from liability in such case. 5. Our position in no way con-

flicts with the decision in *Sackett* v. *Partridge*, 4 Iowa, 416, that defendant cannot traverse the allegations for an attachment. Such traverse raises an immaterial issue, because it determines nothing as to the right of action, and because it ignores the question of probable cause. In this case, the verdict, (under an instruction sufficiently favorable to plaintiff), establishes the want of probable cause. The decision in *Sackett* v. *Partridge*, does not decide that there is no mode of defeating an attachment, where the proceedings to obtain it are regular on their face. It only decides that it cannot be done by traversing the allegations in the petition on which it was sued out, because nothing in the petition is traversable, which does not go to the cause of action. For a like reason, a defect in such allegation, is not demurrable. *Hart* v. *Collins*, 4 Iowa, 56. The remedy is pointed out by the court in the case last cited, viz : a motion to quash. It is submitted that this remedy is equally applicable, when the writ was wrongfully sued out, though the proceedings are regular on their face, and that if it were made clearly to appear on affidavits, that there was no ground in fact, for suing out the writ, a motion to quash would be sustained. Much more should it be sustained, when a jury, after a fair trial, on an issue regularly joined on the point, under instructions not complained of by plaintiff, have found that there was not even probable cause for suing it out, and that verdict is not even asked to be set aside by plaintiff. Courts of other states permit a defendant to defeat an attachment wrongfully obtained, by motion, independently of statute. Drake on Attachment, ch. 15 ; Ib., secs. 292, 293. The repeal of the former statutes of this state, authorizing defendant to traverse allegations for an attachment, merely abrogates that method of proceeding, and does not interfere with the right to quash on motion. 6. The court below denied the motion to quash the attachment, on the broad ground that there is no mode of defeating an attachment wrongfully sued out, when the proceedings to obtain it are regular upon their face ; and that the

defendant has in such case, no remedy but damages upon the
bond.    That this is entirely contrary to the whole course of
adjudication in other states, where, as with us, an attachment
does not issue as a matter of course, on commencing an ac-
tion, will be seen by reference to Drake on Attachment, ch.
15, where the practice in the different states is stated ; by
which it will appear that when the matter is not regulated by
statute, (which, in several states, expressly points out the mode
of defeating such an attachment), the courts generally recog-
nize the right of defendant to have the attachment set aside
on showing that it was improperly issued, by extrinsic evi-
dence, either on motion, based on affidavits, or by plea in
abatement.    It is submitted, that to deny the defendant this
right, is not only unjust to him, but offers a premium to
perjury, (or very loose swearing), on the part of the plain-
tiff, by allowing him, if he chooses to make the affidavit
provided by the law, to obtain an attachment, and hold it,
and reap the fruits of it, only subjecting himself to the very
moderate risk, (practically), that defendant, (whose property
and means for carrying on a protracted and severely contes-
ted litigation, have probably been all taken from him by the
attachment), will sue him on the bond, and succeed in sus-
taining the heavy burden imposed on him in such an action,
by the decisions of this court, namely, that of showing want of
probable cause.    It is submitted that the doctrine established
by this court in *Mahnke* v. *Damon*, 3 Iowa, 107, that in an
action on an attachment bond, plaintiff must allege and
prove a want of probable cause, is in itself a strong argu-
ment against the decision of the district court in this case,
confining defendant to damages on the bond ; since the two
doctrines, taken together, almost guarantee impunity to a
plaintiff, in wrongfully suing out an attachment.    7. The
question left undecided in *Sackett* v. *Partridge*, whether a
claim for damages on the attachment bond, can proper-
ly be pleaded in set-off in the attachment suit itself, is not
before the court in this case.    Since the Code, (section
1854), authorizes suit on the bond before the termination of

the attachment suit, it would seem that under section 1740 of the Code, relative to set-off, there can be no objection to such a set-off, when, (as in this case), the attachment was sued out immediately on commencing the suit. The right of action on the bond, vests immediately, at least for nominal damages, or at all events, " it is a claim held by defendant," (if not matured), "at the time the suit was commenced." But the merely technical objection to a set-off, that it had not accrued when the suit was commenced, is clearly one which a plaintiff can wave, and does waive, by failing to demur, and pleading over on the merits, and the plaintiff, in this case, by taking this course, has precluded himself from ever raising the objection that such a set-off is not allowable.

II. The court erred in excluding the witness, Stolley, on the ground of interest. This objection is not to be favored, and it was taken too late. The bond which rendered him incompetent was part of the record, and plaintiff either knew, or had the means of knowing it, when he was called as a witness. 1 Greenleaf's Ev., sec. 421; *Donelson* v. *Taylor*, 8 Pick., 390; *Shurtleff* v. *Willard*, 19 Pick., 202.

III. The court erred in excluding the evidence offered by defendant, as to charges for interest. The statute enacting that interest on open accounts, shall run from six months after the date of the last item, (Stat. 1852, ch. 37, 67), only applies where there is no contract about interest between the parties. It was meant for the benefit of the creditor, not to restrict his rights. A known and uniform usage, such as was offered to be proved by defendant, is evidence of such a contract, and binding on the parties. *Selleck* v. *French*, 1 Am. Lead. Cases, 494, and cases cited; *Easterly* v. *Cole*, 3 Comstock, 502.

IV. The court erred in instructing the jury, that the defendant's books were not evidence of cash items, except in sums not greater than ten dollars, charged against plaintiff therein. This may be so at common law, though the authorities are not perfectly uniform. 1 Smith Lead. Cases.

Notes to *Price* v. *Torrington*. In this state, the subject is regulated by statute. The Code, (section 2406), prescribes that the entries must be "in the ordinary course of business." This means, the ordinary course of business between the parties to the suit, and defendant proved by the witness, Jensen, that plaintiff was in the habit of borrowing sums of money from defendant from time to time, which were charged to him on the books. The entries being thus proved to have been made "in the ordinary course of business," were competent evidence to prove the items.

V. The court erred in refusing to instruct the jury as requested by defendant, that plaintiff could not claim the benefit of credits given him on defendant's account and books, without thereby making the whole of the debits, evidence to go to the jury. The importance of this ruling arises from the fact, that there are a number of cash items charged in defendant's account against plaintiff—two for $100 each, one for $146, and several for smaller sums. This is a case falling under the general rule, that if one party seeks the benefit of an admission or declaration of the other, whether oral or written, he must take the whole of it together. He cannot exclude that part which makes against him. 1 Greenl. Ev., sec. 201; Code, section 2399. The items of credit are not unqualified and isolated admissions of payment; but they are admissions of payments as made on a particular account, i. e., on one made up of all the items on the debit side. They cannot, with justice to defendant, be separated from that account. Defendant is not to be prejudiced by having, as in fairness he was bound to do, set out both sides of the account. If he had set forth only the debit side, he would have driven plaintiff to independent proof of his payments on the account, and thus, probably, driven him to, himself, put in evidence defendant's books. He cannot be put in a worse situation, than if he had taken that course. The point is fully sustained by the following cases: *Morris* v. *Hurst*, 1 Wash. C. C., 433; *Bell* v. *Davidson*, 3 Ib., 328; *King* v. *Madox's Ex'r*, 7 Har. & J., 467; *Walden* v. *Sherburne*, 15

Johns., 409; *Jones* v. *Jones*, 4 Hen. & Munf., 447; *Waggoner* v. *Gray's Adm'r*, 2 Ib., 603; *Wakeman* v. *Marquand*, 5 Martin, (Lou.,) (N. S.), 265; *Jacobs* v. *Farrall*, 2 Hawks., 570; Cow. & Hill's notes to Phillip on Ev., Part 1, 344; *Randle* v. *Blackburne*, 5 Taunton, 245.

VI.   The court erred in refusing to rule, that the burden was on plaintiff to prove demand, and refusal of payment or security by defendant, and in ruling that the burden was on defendant to prove the negative—that there had been no demand, or refusal.   Whether there had been such demand or refusal, was, (like the existence of his own claim against the defendant), a fact within plaintiff's knowledge, without which, there could have been no probable cause for suing out the attachment.   1 Greenl. Ev., secs. 74, 79; *Porter* v. *Wilson*, 4 G. Greene, 314.   It would be impossible for defendant to prove negatively, that he had never refused.   To require him to do so, is, in effect, to render it impossible to sustain an action on an attachment bond, where the attachment was sued out on an allegation like that in the present case.

*J. W. Stewart*, for the appellee.

I.   The motion to vacate the attachment, made after the verdict, and rendition of judgment thereon, was properly overruled.

1.   Defects in the pleadings of the plaintiff in attachments, which are fatal to an attachment, are of a preliminary character, and may consist, either in a defective statement of the allegations stating the cause for the issuance of the writ; or where the writ issued is informal on its face; or where no bond, or a defective bond, has been filed.   In any of which cases, a motion to quash and vacate the attachment lies.   Motions to quash an attachment, are based on defects apparent on the face of the proceedings, and on the hearing of such a motion, nothing will be considered but what is thus apparent.   Drake on Attachments, section 384.   In the

Veiths v. Hagge.

case at bar, no such objections were raised, and the defendant below having joined issue with the plaintiff on the merits, and gone to the jury, and having elected to claim damages in an action in set-off on the attachment bond, after the verdict of the jury, and the rendition of judgment thereon, the motion to quash the writ by defendant below, comes too late.

If the petition praying for the writ, or the bond, were in any respect defective, defendant below, before issue joined and trial on the merits, should have moved to quash the writ and attachment lien. The courts will not suffer, nor permit the defendant, after having made his election, and brought suit on the attachment bond filed for his benefit, in case of failure to recover damages thereon—or, as in the case at bar, recovering merely nominal damages—to repudiate his election, and fall thence back on the writ, and on a motion merely, quash the attachment, and vacate the attachment lien; that is, having claimed damages for the wrongful suing out of the writ, by a suit on the bond, and having failed in recovering damages thereon, he is estopped thenceforth in setting up any plea which will impair or destroy the writ, or the attachment lien. He has, by his previous plea of record, availed himself of all the benefits accruing to him in the way of damages, by suit on the bond, and has acknowledged the legal existence and continuance of the lien, and the defendant below is bound thereby, and the courts, in such cases, will not allow the rights of the attaching and judgment creditor, to be thus periled, but will protect him in the enjoyment of the fruits of the execution, levied on the property under the attachment lien.

2.   A motion to quash an attachment, is addressed to the discretion of the court, and may be acted on, or declined at pleasure; and this discretion will not be controlled by mandamus; or revised by an appellate court on error. Drake on Attachment, section 386; *Ex parte Putnam*, 20 Ala., 592; *Reynold* v. *Bell*, 3 Ib., 57; *Massey* v. *Walker*, 8 Ib., 167; *Elison et al.* v. *Mounts*, 12 Ib., 472. The statutory

Vol. VIII.—23

provisions regulating attachments in the state of Alabama, are, in the main, identical, with those of Iowa—hence the decisions of that state on this point, are good authority in this court. Drake on Attachment, section 12.

3. By Rev. Stat. of Iowa, 1843, 78, the allegations in an affidavit for an attachment, were traversable. But the Code, (chap. 109), changes the practice in this respect, and in all cases, the "proceedings relative to the attachment, are to be deemed independent of the ordinary proceedings, and only auxiliary thereto." Code, section 1847. This court has also decided, that under the practice existing under the Code, the allegations for an attachment, are not, in the main suit, traversable. *Sackett, Belcher & Co.* v. *Partridge & Cook*, 4 Iowa, 416. This court having decided, that such issues only can be made in an independent action on the attachment bond, it is respectfully submitted, that this issue cannot, in this case, be made by set-off, as was attempted in the trial below.

II. Did the court err in excluding the testimony of witness Stolley? The case in 8 Pick., 390, cited by appellant, is not in point, as the testimony of the witness was not offered to the jury, but to the court, to lay the foundation for the introduction of secondary evidence. The case in 19 Pick., 202, cited by appellant, is good authority to sustain the ruling of the court below on this point. See same case, page 212. So, also, is the authority in 1 Greenl. on Ev., sec. 421. The rule formerly observed, of requiring objections to be made to the competency of a witness only on his *voire dire*, is now, by all our courts, very much relaxed, and a more liberal practice, which looks to the merits and justice of the case, rather than to technical rules, now prevails. *Shurtleff* v. *Willard*, 19 Pick., 212. The objection to the competency of a witness, can be taken at any stage of the trial, when discovered; indeed, if the disqualification did not come to the knowledge of the party till after the trial, it would, if of sufficient importance, be a good ground for granting a new trial. *Shurtleff* v. *Willard*, 19 Pick., 212; 1 Greenl. on Ev., sec. 421;

1 Stark. Ev., 121, and cases cited. The objection to the witness Stolley, he having testified only in part, did not come too late, it being urged as soon as discovered. *Turner* v. *Pearte*, 1 T. R., 719; 1 Phil. Ev. (6th ed.), 121.

III. Did the court err in excluding evidence offered by defendant, to show a local usage in his store, among defendant's customers, in reference to interest on open accounts? In this case no testimony was offered to prove a contract between the parties, to pay interest. It is not claimed that there was any contract. In the absence of an express contract to pay interest, in cases of money due on open account, the Code (sec. 945, and session laws of 1853, ch. 37, sec. 1), determines the rate of interest. A custom is a usage which has acquired the force of law; it derives its binding authority from the tacit consent of the legislature and the people; it follows, therefore, that there can be no custom in relation to a matter regulated by statute. 1 Bouv. Inst., 51. To make a good custom it must be public, peaceable, uniform, general, continued, reasonable, and certain, and it must have continued for a "time whereof the memory of man runneth not to the contrary." 1 Bouv. Inst., 51; 1 Wend. Bl. Com., 75. The usage or custom of no class of citizens can be sustained in opposition to principles of law. *Homer* v. *Dorr*, 19 Mass., 28.

IV. It was a right of the plaintiff below to avail himself of the credits given him by defendant, in his books and account, without reference to the debits of defendant's account, or off-set. This does not fall under the general rule of claiming the benefit of admissions of his adversary, where the whole admission must be taken together. That rule applies to cases where the party wishing the benefit of admissions made, introduces the admissions himself, as testimony in the case; in all which cases the party using and introducing such admissions in evidence, is bound by the whole of it, as well what operates for as against him. The plaintiff below did not seek, nor ask, for either said debits or credits, nor call on defendant below to produce them. They were no

part of plaintiff's cause of action, and defendant below, having, on his own motion, given said credits to the plaintiff, if the defendant below fails to prove the whole of his off-set, and the plaintiff avails himself of the said credits, the defendant is estopped thereafter, from interposing objections, and must abide the consequences of his voluntary acts.

V.   Was the burden of proof on plaintiff to show, on the trial, demand and refusal of payment or security?   The court ruled that the plaintiff, having conformed to the prerequisites of the statute, and obtained a writ of attachment, "the jury must be satisfied that the defendant has established the fact, that the writ was unjustly, injuriously and tortiously sued out, before they can allow damages to defendant, for the wrongful suing out of the same."   This ruling of the court was in strict compliance with the statute regulating attachments.   When a party has observed all the conditions precedent necessary to obtain a writ of attachment, and the writ is issued, and property attached under and by virtue of the writ, it is a right which the law gives to the attaching creditor, to have and to hold his lien on the property under attachment, and that the specific property thus held should be applied to extinguish the judgment obtained thereon.   And if, in any case, the writ is wrongfully issued, the remedy of the defendant is, not to quash and vacate the writ, and extinguish the lien, but in an action on the bond, to recover damages; that is to say, the attaching creditor having taken the course prescribed by law, and having obtained a writ of attachment, and attached property of the debtor, not exempt from execution, and properly subject to the attachment, the property must abide the final order of the court in the premises, and it, or its estimated value, (if a delivery bond has been taken), must invariably be forthcoming, to satisfy, either in whole or in part, the judgment obtained, subject, however, to this one exception— if the attaching creditor has abused the power given him by the statute, and wrongfully sued out the writ—that he pay all damages the defendant has sustained by the abuse of the

power given him by the statute, in the unjust, improper and tortious use of the writ.

The allegations asking for an attachment in the petition, this court have already ruled, were not traversable on the pendency and trial of the principal suit. 4 Iowa, 416. Such an issue can only be raised in an action on the attachment bond. Now, whether this issue is made in an independent action on the bond, or in an action for damages on the bond, by way of set-off to the main suit pending, is immaterial; the issue, in both instances, is the same, and that issue is, was the writ wrongfully issued? The defendant having averred that it was, and the plaintiff having joined issue with him thereon, it was for the defendant to show, or to make out, at least, a *prima facie* cause to the jury, that the writ was wrongfully sued out, before the plaintiff could be called on to make defense to the matters and things alleged by defendant in his suit for damages on the bond. Hence, the ruling of the court in this case, that the burden of proof was on the defendant; that the plaintiff, having complied with the provisions of the statute, had obtained his writ, and was entitled, therefore, to all the benefits to be derived therefrom; and the defendant, having elected to bring his action in set-off on the bond, the defendant, before he could recover damages thereon, must make it appear affirmatively—or, at least, a *prima facie* appearance—that plaintiff had sued out the writ unjustly, injuriously and tortiously, as a condition precedent to his recovery of damages.

STOCKTON, J.—1. We think there was no substantial prejudice to the rights of the defendant, in the permission given by the court to the plaintiff, to interrupt the examination in chief of the witness, Stolley, to enable the plaintiff to ask him whether he had any interest in the suit. Objection to the competency of a witness should, in general, be taken before he is examined in chief. There is no objection, however, to its being taken at any time during the trial, provided it is taken as soon as the interest is discovered. If

discovered during the examination in chief, it is not too late to make the objection. 1 Greenleaf Ev., section 421. There is nothing to show that the interest of the witness was known to the plaintiff, until it was disclosed, upon his examination, that he was surety in the delivery bond given for the property of defendant attached in the suit. The fact that the bond was on file among the papers of the suit was not, of itself, sufficient to bring the matter to the notice of the plaintiff. That the witness was incompetent by reason of the security given by him, does not seem to be contested by the defendant.

2. The defendant claimed to be allowed interest on his open account against the plaintiff, from the end of the year during which the same accrued; and offered to prove that by the usage and mode of dealing between him and his customers, having open accounts, all such accounts were considered due at the end of the year; that interest on the same from that time was charged by defendant to his customers; and that such custom was known to plaintiff. The court refused to receive the evidence.

When money is due by agreement, at a particular time, interest may be charged after that time; or when there is a settlement of matured accounts, interest is chargeable from the time the balance is ascertained. But where there is an open account, interest on the same can only be charged after six months from the date of the last item. Code, section 945; Acts 1853, 67. If the defendant is entitled to charge interest on his account in this instance, he can only be so entitled on the ground that the plaintiff kept an open account with defendant, knowing his usage and mode of dealing with his customers; and that this fact amounted to an implied agreement, at least, to pay interest on the account after the end of the year. If it be the creditor's custom, known and acquiesced in by the debtor, to charge interest, or if such be the uniform usage of the trade, such facts, if proved, are evidence of an agreement, and interest will be allowed. *Meech* v. *Smith*, 7 Wend., 315, 318; *Eas-*

*terly* v. *Cole*, 1 Barbour, 236; *same* v. *same*, 3 Comstock, 502; *Williams* v. *Craig*, 1 Dallas, 313.   The evidence offered, we think, should have been admitted, and it should have been left to the jury to determine whether, the facts shown amounted to an agreement between the parties that the account was to be considered due at the end of the year, and that interest was to be charged after that time.

3.   The account pleaded by the defendant, by way of set-off to the plaintiff's action, commenced in April, 1855, and continued up to December, 1856.   It contained, among others, several items charged against plaintiff, as "cash $100," and " cash $146."   The defendant, after having produced the necessary preliminary evidence in verification of his books of account; and after having proved by one Jensen, who was his clerk from March, 1855, to March, 1856, that plaintiff during that time was a customer of defendant, and in the habit of borrowing sums of money of defendant, from time to time, which were charged to him in said books of account, without offering any other evidence in support of said cash items charged to plaintiff, offered to prove the same by the said books.  The court charged the jury that " cash, except in small items, to the amount of ten dollars or thereabouts, which appear to have been furnished in the ordinary course of dealing between the parties, is not the subject of book account, and cannot be proved by the books alone.   But to entitle the defendant to recover for such items, there must be other evidence than what the books furnish.   If there is evidence other than the books, that the money was loaned to the plaintiff, items of such character the jury will allow."

When the preliminary proof is made, as required by the Code, (section 2406), the admissibility of the books of account, is a question for the court; the degree of credit to be given to them, after they are introduced, is to be determined by the jury.   They are admissible to prove charges by one party against another, made in the ordinary course of business, and for no other purpose.   The question whether the

charges, sought to be proved by the books, are made in the
" ordinary course of business," may oftentimes be difficult
of determination.   It has been held that the books of ac-
count of a farmer or planter, are not evidence to prove a
sale and delivery of articles; for such transactions are not
in the usual course of business of farmers.   *Jeter* v. *Mar-
tin*, 2 Bevard, 156; and in *Thayer* v. *Dean*, 2 Hill, 677,
the same court held that the memorandum books of a ped-
lar were inadmissible, because such persons usually do not
deal on credit, and cannot conveniently keep books.  "They
do not fall within that class of persons, (say the court), in
whose pursuit or employment, convenience, or the usage of
the country, imposes the necessity of keeping books of ac-
count."  So, it is held that the article sold must be in the line
of the party's general business; and that the sale of a horse
could not be proved by an entry in the books of a dry-
goods merchant, or tradesman.   *Shoemaker* v. *Kellogg*, 1
Jones, 310.   If the entries appear to have been made out
of the usual course of business, the books are to be rejected.
*Lynch* v. *M'Hugo*, 1 Bay., 33.   In *Leveringe* v. *Dayton*, 4
Washington, C. C., 698, the plaintiff's ledger was offered
with a debit :   " To duties, $1602."   The court rejected the
evidence, not because the entry was in the ledger, but be-
cause it was a large charge of money paid on account, en-
tered all at once, without appearing to be in the course of
business.   The party offering the books must prove what
his ordinary business is ; and the jury, under the direction
of the court, are to allow or disallow the charges made, ac-
cording to the credit they may attach to the books, and ac-
cording as it may be determined whether the charges are
or are not made in the ordinary course of business.

Upon the question of the admissibility of the party's
book of entries for the purpose, and the extent to which it
is allowable to prove by them the cash items in an account,
the rule varies in the different states.   In Massachusetts,
Maine and New Hampshire, money charges may be proved
by them to the extent of $6 66, but not beyond.   *Union*

*Bank* v. *Knapp*, 3 Pick., 109 ; *Burns* v. *Fay*, 14 Ib., 12 ; *Prince* v. *Smith*, 4 Mass., 455 ; *Wetherell* v. *Swan*, 32 Maine, 247 ; *Richardson* v. *Emery*, 3 Foster, 220 ; *Bassett* v. *Spofford*, 11 N. H , 169.

In Pennsylvania, the book of original entries, made by the party, and verified by his oath, is competent evidence of goods sold and delivered, and work done, and of the price, but not of money lent or paid. *Ducoign* v. *Schreppel*, 1 Yates, 347.

In South Carolina, the book of the party is evidence to prove the delivery of articles sold, or work done, and nothing more. *St. Phillip's Church* v. *White*, 2 McMullen, 312.

In Delaware, by statutory regulation, in an action for articles sold and delivered, and other matters properly chargeable in an account, the oath of a plaintiff, together with a book regularly and fairly kept, are declared to be sufficient in all cases to charge a defendant. Hall's Revised Laws, 89. But the courts have held that cash is not a matter properly chargeable in account. *Smith* v. *M'Beath*, cited in Harrington, 346.

In New York, in *Case* v. *Potter*, 8 Johnson, 211, the question of admissibility was not decided ; but it was said by the court, that although a shop book might be admitted in case of a sale and delivery, yet the usage " can never apply to a charge for cash lent, but only to the regular entries of the party in the usual course of his business." In *Vossbing* v. *Thayer*, 12 Johnson, 461, the court say : that " books of account are not evidence of money lent, because such transactions are not, in the usual course of business, matters of book account."

In Illinois, the rule in New York has been adopted, and it is held, that upon the necessary and usual preliminary proof being made, in case of open account, composed of many items, the plaintiff's book of accounts is admissible ; but that this does not apply to an action for money lent, as that is not usually the subject of a charge in account—a note being generally taken. *Boyer* v. *Sweet*, 3 Scam., 120.

In New Jersey, the party's books are evidence of work done and articles delivered; as to cash items, it is held that of a single charge they are not evidence, nor of two or three charges standing alone. *Carman* v. *Dunham*, 6 Halsted, 189. Yet where there have been miscellaneous dealings between the parties, and there are, among other charges, entries of cash lent, which appear to have been in the course of business, and are according to custom, it is said the practice has been to admit the books in evidence. *Craven* v. *Shaid*, 2 Halsted, 345. But the admissibility of the book to prove such items, has been subsequently denied in New Jersey, in *Carman* v. *Dunham*, *supra*, and still later in *Inslee* v. *Prall*, 3 Zabriskie, 458, where the book contained charges for cash, interspersed with other charges against other persons, through a course of years. The court say: "Goods are generally bought and sold in a store, in a shop—often by clerks, frequently in the presence of a third party; they are mostly taken to a man's family and used there. Services are very generally rendered in public, or there are circumstances which afford some possibility of rebutting fraudulent charges respecting them. But not so with money transactions. They occur at a man's house—on the streets and highways—not in the presence of third parties—perhaps more frequently in private than in public. It can always be safely alleged that they so occurred. You may trace goods to their use, sometimes. but not money, to any certainty. Services generally produce something tangible or visible, with which the service was connected. But no man can prove that at a particular time he did not receive money, unless he can prove an *alibi*."

In Ohio, if the matters charged are such as generally constitute the subject of a book account—if the book is produced—the performance of the services, if the charge be for work, and the quality, quantity, and delivery of the goods, if the charge be for goods—may be proved by the oath of the party claiming by virtue of the book account. This practice is applicable to charges for goods sold, and

Veiths v. Hagge.

labor and other services performed, contained in the account books of merchants, farmers, mechanics, and professional men. As to money charges, a distinction is taken. If, in the course of business, small sums are passing between the parties, these may, it is held, be charged on the book, and proved in the same manner as the other items of the account. Yet money lent or paid, especially if in any considerable amount, is ordinarily not the subject of book charge; a note or receipt is usually taken; and therefore, though an individual might be engaged in a business that would justify such charges, yet in ordinary cases they are inadmissible. *Crane* v. *Spear*, 8 Hammond, 494. The action was on an account, the items amounting to $900— three of the charges, amounting to $700, were for cash lent. It was proposed to prove them by the party's oath. It was held that it could not have been the intention of the legislature to admit this kind of testimony in such a case. See *Smiley* v. *Dewey*, 17 Ohio, 156.

We think the general rule is clearly established by these authorities, that a charge for "money paid," or "money lent," cannot be proved by a party's book of accounts; that such transactions are not usually the subject of a charge in account; and that charges of that nature are not such as are made in the ordinary course of business by one party against another.

It may be safely affirmed that the general rule in the business transactions of men is, that the person lending or paying money usually takes a note or receipt. As is said, however, by HITCHCOCK, J., in *Crane* v. *Spear*, 8 Ham., 494, an individual might be engaged in a business that would seem to justify such charges—as where one's ordinary business may be said to consist in receiving money on deposit, and paying it out for others. When such fact is shown, the book may be proper evidence of the payment of money. This would not, however, apply to the case of a party engaged in the mere business of keeping a retail store, whose customers purchase goods of him on credit, which are

charged to them in a running account. Loaning, or paying out money to his customers, is no part of such a person's business. They would not ordinarily expect to find themselves charged in their accounts with sums of money lent or paid.

The law admits this kind of evidence in any case, only on the ground of "moral necessity." The practice is only justified on the ground, that without such evidence there would, in many cases, be a total failure of proof. At the very best, it is but presumptive evidence, and that, too of the very lowest grade. It should always be received with great caution, and be subjected to the strictest scrutiny. *Larue* v. *Rowland*, 7 Barb., 107. The courts and legislatures have jealously limited its operation to that character of dealing to which the law has ascribed, *prima facie*, a destitution of the ordinary means of proof, viz : the daily sale and barter of merchandise, and other commodities, the performance of services, and letting of articles to hire, and probably the payment from time to time of money placed on deposit— circumstances so frequent in succession, and so trivial in their individual amount, that the procurement of formal proofs could not be expected, and would not compensate for the time necessary for the purpose. *Brannan* v. *Foree*, 12 B. Monroe, 508.

It was not sufficient to constitute the books, in this instance, legitimate evidence of money lent or paid to the plaintiff, that the defendant proved by the witness, Jensen, that the plaintiff was a customer at defendant's "store," and was in the habit of borrowing, from time to time, sums of money from the defendant, which were charged to plaintiff in his account. This might show a course of business between them. But that is not of itself sufficient. The charges, allowed to be proved by the book, are such as persons engaged, as the defendant was, in the business of keeping a retail store, for the sale of merchandise, would, in the ordinary course of business, be expected to make against their customers.

Vieths v. Hagge.

The statute has not made any such distinction, as that
small sums of money may be proved by the party's books,
but that large sums shall not be so proved.    The question
whether the charges are made in the ordinary course of
business, as well as the credibility of the books when pro-
duced, is for the jury to determine.    They might more
readily admit the sufficiency of the book to prove charges
of money of a small, than of a large amount.    So they
might more readily conclude, that the loan or payment of
small sums of money by a retail trader to his customers, and
charged in their accounts, was more nearly in the ordinary
course of business, than the loan or payment of large sums ;
and if they should judge that small money charges were
legitimately made, in the ordinary course of business, we
should not be inclined to hold that they might not so de-
termine, and allow them accordingly.    See *Sloan* v. *Ault*,
and *Young* v. *Jones, post.*

4.    The defendant, in order to prove the account offered
by him in set-off, produced in evidence, as before stated, his
books of account, on which the several items charged to
the  plaintiff  in the account offered in set-off, appeared
charged against him.    The  plaintiff introduced no inde-
pendent evidence on his part, to prove any payments made
by him to the defendant on said account, but relied in order
to establish the same, on the credits given him for such
payments upon the account offered in set-off, and the said
books of account.

The defendant  asked  the court  to charge the jury, that
"if the plaintiff claimed the benefit of the credits given to
him by defendant, on his account, on the books of account,
and on the accounts set forth in the answer, he thereby
made said books and accounts, evidence to go to the jury,
and be considered by them, in support of all the items
charged against the plaintiff therein, including the cash
items, subject to be rebutted as to any of such items, by
counter evidence on the part of the plaintiff.    And that the
plaintiff could not claim the benefit of the items credited to

him on said account, and at the same time exclude from the consideration of the jury, any of the items charged against him in the same account."

The court refused to give the instruction, but directed the jury, that " the plaintiff was entitled to all credits, and all acknowledgments of indebtedness to him, made upon defendant's books, if he chose to avail himself of them. .But if, upon examination of the debits and credits, and all the other evidence in the case, the jury believe that the plaintiff delivered property to defendant, and defendant, at the same time, paid over the amount, .or a part of it, for which he purchased said property, and the purchase of the property and the payment for it, was one and the same transaction, then the jury may balance the one against the other."

We think there was error in the refusal of the court to give the instruction as requested by the defendant. If the plaintiff had called for the production of the defendant's books of account, and had himself given them in evidence, to prove the credits he was entitled to on the account of the defendant against him, there is no dispute but that he would not be allowed to use the credits entered therein, as evidence in his favor, without at the same time making the debits evidence against him, and in favor of defendant.

But the authorities go farther still; and it is held, that it is no matter by whom the account is given in evidence, or sought to be used. If the party against whom the entries are made, or account rendered, relies upon, or seeks to avail himself of, credits entered in his favor, he will not be allowed to do so without, at the same time, making the whole account evidence against him. The authorities to this point are both numerous and respectable, and so far as we have been able to examine them, are all one way. *Morris* v. *Hurst*, 1 Washington, C. C., 433 ; *Bell* v. *Davidson*, 3 Ib., 328 ; *King* v. *Madox*, 7 Harr. & J., 467 ; *Waldron* v. *Sherburn*, 15 Johnson, 409 ; *Turner* v. *Child*, 1 Dev., 133 ; *Waggener* v. *Gray*, 2 Hen. & Mun., 603 ; *Jones* v. *Jones*, 4

Ib., 447; *Wakeman* v. *Marquand*, 5 Martin (Louisiana), 2d series, 514.

The question is not, whether the money items charged by defendant to plaintiff, were matters properly chargeable in book account; nor whether the plaintiff, by relying on the credits entered in his favor, made the books evidence to prove what they were not before competent to prove; but it is, whether a party seeking to have the benefit of an admission or declaration of another, must not take the whole admission or declaration together; and whether he will be allowed to select what makes in his favor, and exclude what is against him. 1 Greenl. Ev., sec. 201; Code, sec. 2399.

The credit items of defendant's account against plaintiff, were not to be taken as unqualified and isolated admissions of payment, but as payments made on the account as it stood in his books. The question is not so much whether the books are made competent evidence to prove the money items charged, as whether the whole account is made evidence for defendant, and, with the debits as well as credits, is all to go to the jury.

5. The defendant claimed damages against the plaintiff, by way of set-off, for the wrongful suing out of the writ of attachment. No evidence, it seems, was produced by the plaintiff, on the trial of the issue joined on the averments of the affidavit on which the writ issued, to prove that defendant, at the time of the commencement of the action, had any property not exempt from execution, which he refused to give in payment or security of the plaintiff's claim; nor was there any evidence produced, that the plaintiff had ever demanded such payment or security; nor that defendant had ever refused to give the same.

The defendant asked the court to charge the jury, that the burden of proof was on the plaintiff, under the issue joined, to show such demand and refusal. The court refused so to charge the jury, and instructed them that, "the plaintiff having taken the course prescribed by the law to obtain an attachment, the jury must be satisfied that defendant has es-

tablished the fact that the attachment was wrongfully sued out; that is, that it was sued out unjustly, injuriously, tortiously, and in violation of right, before they can allow the defendant damages for the wrongful suing out of the same."

The defendant had averred that the writ of attachment. was wrongfully sued out, because, among other reasons, he (said defendant) had no property, not exempt from execution, which he refused to give in payment or security for any debt justly due from him to the said plaintiff. On issue joined by the plaintiff on this averment, the burden of proof is, without doubt, on the defendant, to show that the writ was so wrongfully sued out; and if he relies upon the fact, to sustain the issue on his part, that no demand was ever made upon him for such payment or security, and that there was, consequently, no refusal, he must prove it.

The true test to determine where is the burden of proof, is to consider which party would be entitled to the verdict, if no evidence were offered on either side; for the burden of proof lies on the party against whom, in such case, the verdict ought to be given. 1 Greel. Ev., sec. 74, note, citing *Leet* v. *Gresham Life Ins. Co.*, 7 Eng. Law & Eq. Rep., 578.

6. The court directed the jury to find specially on the issue joined, whether or not the writ of attachment was wrongfully sued out; and if they found that it was so wrongfully sued out, to find specially the amount of damages sustained by the defendant in consequence of such wrongful suing out. The jury found for the plaintiff, but returned a special verdict, that the writ of attachment was wrongfully sued out, and assessed defendant's damages therefor at ten dollars. The defendant thereupon moved the court for a judgment on said special verdict, quashing the said writ.— The motion was overruled, and judgment in chief rendered for the plaintiff.

The proceedings relative to the attachment, are independent of the principal suit, and only auxiliary thereto; (Code,

sec. 1847), and it has been held by this court, that no issue can be joined in the principal suit, on the averment of facts contained in the affidavit on which the writ issues.   *Sackett, Belcher & Co.* v. *Partridge & Cook*, 4 Iowa, 416.

Although the jury found in their special verdict, returned under the direction of the court, that the writ was wrongfully issued, yet such finding by them, was not by virtue of any issue made or joined in the principal suit, but was returned by them as incidental to the issue made in the cross-action by defendant, on the attachment bond, for damages sustained by him from the wrongful suing out of the writ.

The law has provided that the plaintiff, on making oath to certain facts to be stated in his petition, may cause the property of the defendant to be attached. Code, sec. 1846 and 1848.   It has made no provision, however, for any issue or proceeding to try the truth of the facts averred in the petition for the writ ; nor for the dissolution of the writ, upon its being ascertained that the said averments are not true, and that the writ was wrongfully sued out, even though the same should be made to appear from the verdict of a jury.   We do not see that the party injured by such wrongful suing out of such process, has any other remedy for his injury, than by an action on the attachment bond, unless in cases where an action of trespass would lie.   For the errors in the instructions above referred to, the judgment will be reversed.

Judgment reversed.