## WILLIAMS ET AL. v. STONE.

VENDOR AND PURCHASER — CANCELLATION OF DEEDS TO LAND EXECUTED WITHOUT CONSIDERATION.

1. S. owned ranch property in Wyoming and contracted with W. for exchange of the same for Denver realty. The contract stated that W. was the owner of the Denver property subject to the foreclosure of a second mortgage thereon and certain other encumbrances, all amounting to about $16,000. S. was to take the property subject to $16,000 of encumbrances. In the contract W. agreed to convey "by good and sufficient warranty deed, with full covenants, free and clear from all liens, taxes, and encumbrances" excepting the encumbrance of $16,000, and that he "is now lawfully possessed and may lawfully convey the same as above stated." S. executed deeds for his ranch, placed them in escrow as required by the contract, and they were delivered to W., who did not execute or deliver any deed for the Denver property. W. had no interest therein, as it had been sold on foreclosure of the second mortgage, and there was no statutory right of redemption. W. was insolvent. In an action brought by S. to secure the cancellation of the contract, and his deeds; Held, that W. had nothing to sell or convey, and the conveyances by S. were without consideration, and he was entitled to a decree vacating and cancelling them.

2. The fact that the purchasers at the foreclosure sale, who had been the mortgagees, were willing that W. should redeem, was of no consequence as he had not taken advantage of it, and S. had done nothing to prevent such redemption or repurchase.

3. The fact that, after making the contract, S. accepted a contract from the foreclosure purchasers granting him a thirty day option to purchase the property from them by special warranty deed, and paid $200 upon such contract, but never completed the purchase or took any further advantage of the option, did not operate to release W. from his contract obligations.

4. Beneficiaries in trust deeds executed by W. upon the Wyoming property after the delivery of the deeds to him, having been present at the conferences resulting in the contract between S. and W., understood the situation and assisted in bringing about the contract, and having taken with knowledge of the equities of S. and the weakness of W.'s title, were not in the position of innocent purchasers for value, and S. was entitled to a decree cancelling said trust deeds.

[Decided August 1, 1896. Commenced in the District Court, December 31, 1892.]

ERROR to the District Court for the county of Laramie, HON. RICHARD H. SCOTT, Judge.

Thomas H. Stone brought this action against David Williams, Leanor Williams, H. W. Bennett, J. A. Myers, Jacob M. Murphy, F. E. Roots, J. R. Roots, William A. Mc Dowell, Martin Melhorn, C. W. Gregg, and Nancy J. Graham, to set aside and annul certain deeds, trust deeds, and an assignment of a contract for lands, and also to annul a certain contract between said Stone and David Williams, which had resulted in the said conveyances sought to be cancelled. The grounds assigned for the cancellation were want of consideration, and fraud. The answer denied the fraud, and set up facts to show consideration. The case was tried in the district court, where the finding was generally for the plaintiff, and a decree was entered cancelling and vacating the several conveyances. The case was taken to the supreme court on error by the defendants. The facts sufficient to cover

the point upon which the case was decided are stated in the opinion.

*Harry J. O'Bryan*, for all plaintiffs in error except John H. Graham. *Clay B. Whitford*, for Graham.

A purchaser is bound to exercise ordinary discretion, and the means of knowledge being within his power, if he neglects to make proper inquiry he loses his remedy against the vendor for any fraudulent representations the latter may have made. (Wheeler v. Dunn, 13 Colo., 428; People v. Tynon, 29 Pac., 809; Parker v. Moulton, 14 Mass., 99.) The court will not inquire into the adequacy of consideration except when connected with fraud. (3 Am. and Eng. Ency. L., 831; Story's Eq. J. Sec., 245, 246.) Where clauses are repugnant and in conflict, the earlier prevails in deeds and other instruments between the parties *inter vivios*. (Wolff v. Helbig, 43 Pac., 133; Stuyvesant v. W. M. I. Co., id, 144.) Every contract is to be interpreted in connection with the surrounding circumstances; and the acts done by the contracting parties in fulfillment of the contract may be regarded to see what interpretation the parties have put upon it, and what conditions have been waived or performed. The deed required by the contract had been waived by the contract made by Stone with Bennett & Myers. (Addison on Cont., 877, 878; Laird v. Pim, 7 M. & W., 485; Bish. on Cont., 795, 796.) Oral agreement made after written agreement, and before breach thereof, is admissible to show a new contract waiving, varying, or annulling the written. (Spann v. Baltzell, 46 Am. Dec., 346; Bish on Cont., 75.) The waiver and laches of Stone causing the forfeiture of the right of Williams in the Denver property, the former is inhibited from rescinding the contract without first placing the latter in statu quo, and where a contract relating to lands is performed and accepted as far as required, the contract is taken out of the statute of frauds. (Burge v. Cedar Rapids, etc., 32 Ia., 105; 2 Pars. Cont., 5th Ed., 679; Franklin v. Miller, 4 A. & E., 599; Hunt v. Silk, 5

East, 449; Bud v. Blandford, 2 Young & J., 278; Henninger v. Heald, 29 Atl., 193.) A contract can not be rescinded unless there has been a total failure of performance by the opposite party. (Selby v. Hutchinson, 4 Gilm., 332; Weintz v. Hafner, 78 Ill., 29; Doggett v. Brown, 28 id., 493; Mc Pherson v. Walker, 40 id., 371.) There could have been no rescission until a deed had been demanded and refused. Although the authorities are conflicting, the better doctrine is that one who takes property in payment or as security for a pre-existing debt, is to be regarded as a purchaser for value. (1 Hilliard Mort., 610; Herman Mort., 52; Babcock v. Jordan, 24 Ind., 14; Bayley v. Greenleaf, 7 Wheat., 46; Dey v. Dunham, 2 John. Ch., 182; Roberts v. Salisbury, 3 Gill & J., 425; Gann v. Chester, 5 Yerg. 205; Work v. Brayton, 5 Ind., 396; Richerson v. Richerson, 2 Gratt., 497; Mitford v. Mitford, 9 Ves., 100; 2 Story's Eq., 657, 658; 4 Kent's Com., 154; Mc Murtrie v. Riddell, 9 Colo., 497; Merchants v. Mc Clellan, id. 608; Haraszthy v. Shandel, 1 Colo. App. 139.)

*Burke & Fowler*, for defendant in error.

An unauthorized delivery of a deed passes no title even to innocent purchasers. (Wheelwright v. Wheelwright, 2 Mass., 446; Loan Co. v. Peck, 112 Ill., 408; Ry. Co. v. Mc Culloch, 59 id., 166; Bank v. Godfrey, 23 id., 631; Patrick v. Mc Cormick, 10 Neb., 1; Robins v. Mc Gee, 76 Ind., 381; Evarts v. Agnes, 4 Wis., 356; Calhoun, v. Am. Eng. Co., 93 U. S., 124; Smith v. Bank, 32 Vt., 341; Daggett v. Daggett, 143 Mass., 516.)

Nothing but a deed from Williams would have satisfied the contract. (1 Warvelle on Vendors, 14; Hussey v. Roquemore, 21 Ala., 281; Crabtree v. Levings, 53 Ill., 526; Rudd v. Savelli, 44 Ark., 145; Royal v. Denison, 38 Pac., 39; Williamson v. Banning, 86 Hun., 203; Bacon v. Mc Chrystal, 10 Utah, 290; Glenn v. Rossler, 88 Hun., 74.) It was the duty of Williams to tender or deliver a deed before he could hold the deeds from Stone.

(Robb v. Montgomery, 20 Johns., 15; Judson v. Wass, 11 id., 525.) Where a vendor is without title, he has no right to acquire it after the deed is due. (Camp v. Morse, 5 Denio, 161.) Where a vendor has not title, any precedent condition on the part of the vendee need not be fulfilled, such as tender, or security, as to require such performance would be "a most idle act." (Lawrence v. Taylor, 5 Hill, 107; Glenn v. Rossler, 88 Hun., 78.) The promise is not made for a promise, but for the land; the moving cause is the estate; and if that fails to pass, the promise is a mere *nudum pactum.* (Rice v. Goddard, 14 Pick., 293.) Want of title constitutes an entire failure of consideration. (Steinhaurer v. Witman, 1 S. & R., 437; Dunning v. Leavitt, 85 N. Y., 30; Kindley v. Gray, 6 Ired. Eq., 445; Shaw v. Vincent, 64 N. C., 690.) In this case the parties had expressly stipulated for the right to examine title after deeds were deposited.

Stone was in possession of his land in Wyoming when all the other plaintiffs in error secured their alleged interests. Their liens were taken to secure pre-existing debts. They gave no new consideration. The case is different from that of a transfer of negotiable paper. The parties can not be regarded as purchasers for value. (2 Pomeroy's Eq., 748, 749; Devlin on Deeds, 815; Wood v. Robins, 22 N. Y., 566; Pancoast v. Dugal, 26 N. J. Eq., 445; Mingus v. Condict, 23, id., 313; Ruth v. Ford, 9 Kan., 17.)

CONAWAY, JUSTICE.

On August 30th, 1892, defendant in error was the owner of a ranch property near Cheyenne, Wyoming. The ranch consisted of 320 acres of land to which defendant in error had title, and 420 acres of railroad land which he held by an assignment from A. Gilchrist of a contract with the Union Pacific Railway Company for the purchase of the land, and on which contract there remained to be paid $280 in two equal annual instalments in May, 1893, and May, 1894, to en-

title defendant in error to a final deed. Defendant in error also owned a one-third interest in the Stone and Mc Gee Irrigating Ditch and water right, and all of Stone Irrigating Ditches numbered one and two. He also had under fence about 1280 acres of public land which he claimed to hold under the laws of Congress for the reclamation of arid lands.

On August 30, 1892, as a result of previous negotiations, he entered into a contract with David Williams to trade his ranch property for realty in Denver. This deal seems to have been effected through the agency of J. R. Roots, who acted as middle man in bringing the parties together, and received compensation from both parties. Each party was to deliver abstracts of title within eight days, and the abstracts of title being approved, the necessary conveyances were to be made by each party on September 13, 1892. This time was afterwards extended to September 22.

Defendant contracted to pay to David Williams $280, the amount necessary to complete the payments on the 420 acres of railway land, and he was to take the Denver property subject to certain incumbrances amounting to about sixteen thousand dollars. If the incumbrances proved to be in excess of that amount, Williams was to pay him the difference—if less, he was to pay Williams the difference. Defendant in error executed the necessary conveyances on his part and placed them in the hands of J. R. Roots. On September 22, 1892, J. R. Roots tendered them to David Williams. Williams then refused to receive them, because they were not accompanied by $280, the amount necessary to complete the payment for the railroad land. But on September 24 he accepted them. The conveyances were executed to Leanor Williams, who was the wife of David Williams. On September 22, 1892, she executed a trust deed conveying to Jacob M. Murphy a portion of the titled land and water rights of the ranch to secure a note of $200 which she made in favor of F. E. Roots. F. E. Roots was the wife

of J. R. Roots, and the note was given as compensation for the services of J. R. Roots, in effecting the exchange of the Denver property of David Williams for the Wyoming ranch of defendant in error. On September 26, 1892, Leanor Williams executed to William A. McDowell, a trust deed conveying to him a portion of the titled land of the ranch with water rights, to secure the payment of a promissory note for $730 held by Jacob M. Murphy, and a note for $127 held by Martin Melhorn.

On December 9, 1892, Leanor Williams executed a trust deed conveying to C. W. Gregg a portion of the titled lands of the ranch to secure the payment of a note for $3,500 made by her in favor of Nancy J. Graham.

The amended petition of Thomas H. Stone, defendant in error, makes David Williams and Leanor Williams and all of the trustees and beneficiaries defendants. It sets up fraud and want of consideration in procuring the contract between defendant in error and David Williams and the conveyances of the ranch property to Leanor Williams, of which fraud and want of consideration all of the said trustees and beneficiaries had full knowledge. Nancy J. Graham, one of the defendants in the trial court, made no defense in that court, and is not a party to this proceeding in error.

On or about September 29, 1892, Leanor Williams executed in favor of John H. Graham an assignment of the contract for 420 acres of railroad land, which contract had been assigned to her by defendant in error. The assignment to Graham was to secure an indebtedness of David and Leanor Williams to John H. Graham of about $450. John H. Graham paid the balance of the contract price of the land, getting a deduction from the full amount of $280 by paying before it was all due. He then received a deed for the land from A. Gilchrist, who procured a deed from the railway company under the original contract. John H. Graham was not made a party defendant in the petition or bill of complaint, but came in voluntarily and filed an answer by leave of the trial court

when he ascertained that his title was jeopardized by the attack upon the assignment of the contract to Leanor Williams, his assignor, as fraudulent and without consideration.    He adopted the answers of the other defendants denying fraud and want of consideration, and set up some new, matter in his own behalf tending to the same conclusion, and denying knowledge of any equities of defendant in error in the premises if he had any.    The trial court, in its judgment and decree, found generally for the plaintiff, defendant in error here, and annulled the deeds of defendant in error and his wife for the ranch property, the assignments of the contract for the railway land, and the several trust deeds mentioned above, and decreed that John H. Graham should hold the railway land only as security for the amount to be paid in fulfillment of the contract assigned to him with interest; and also that a certain paper purporting to be a relinquishment of the desert-land claim be returned to defendant in error.    This judgment and decree is challenged as not sustained by the evidence.

The conveyances by defendant in error of his ranch property are attacked by him in his amended petition for fraud and for want of consideration.    The decree of the trial court does not state on which ground those conveyances were annulled.

Counsel for defendant in error in their brief name five grounds on which the conveyances were attacked; fraud, want of consideration, deceit, mistake, and undue influence.    Only fraud and want of consideration are specifically alleged in the petition or bill of complaint, but deceit and undue influence may be considered as elements of the fraud charged.    No mistake in any of the transactions is alleged or proven.

As already stated, defendant in error conveyed away his entire ranch property.    For this he has received absolutely nothing.    It being indisputable that defendant in error received nothing for his property, there is an attempt to show a consideration consisting of an injury to Williams.    It is insisted that Williams lost a right to

redeem or purchase back the Denver property on account of certain laches of defendant in error. To understand the merits of this contention, a further reference to the contract for the exchange of the properties is necessary. The contract stated by way of inducement that David Williams was the owner of the Denver property "subject to the foreclosure of a certain second mortgage by Horace W. Bennett and Julius A. Myers, to the record of which reference is here made; and also subject to the certain incumbrances of twelve thousand five hundred dollars, interest and taxes, amounting in all to about sixteen thousand dollars."

The contract also provided that David Williams, after examination and approval of abstracts, would convey to defendant in error, "by good and sufficient warranty deed, with full covenants, the said property so owned by first party, free and clear from all liens, taxes, and incumbrances, saving and excepting the said incumbrance of sixteen thousand dollars." Yet another provision of the contract is the following: "It is further covenanted and agreed that the representations made by each to the other of the foregoing as to title is true and correct, and that each party is now lawfully possessed and may lawfully convey the same as above stated." At this time, and for some time previous, David Williams had no interest in the Denver property whatever. Bennett and Myers had foreclosed their mortgage, and for some time had been collecting the rents. It is stated in the pleadings, and assumed in the argument on behalf of plaintiffs in error, that David Williams had six months from the foreclosure sale in which to redeem. The evidence is to the effect that at that time there was no redemption from such foreclosure sale. In the language of the witness, J. R. Roots: "Williams had no equity." Williams was utterly insolvent to the knowledge of all the parties in interest. He gave nothing for the property of defendant in error, and had nothing to give. He has lost nothing, and had nothing to lose—not even an equity of redemption.

But it is urged that Bennett and Myers were willing that Williams should redeem. It does not seem to affect the merits of the case whether they were or not. There never was anything done by defendant in error to prevent Williams from buying the property from Bennett and Myers. He might have made the purchase at any time, except possibly the thirty days when defendant in error held an option, and may do so yet as far as appears from the evidence. He never made the purchase.

Much stress is laid upon the point that the conduct of defendant in error was such as to waive his right to a deed from Williams to the Denver property, which he was entitled to under the contract. But there was no consideration from Williams either for the contract or the waiver, neither for the conveyance of the ranch property. The total lack of consideration as between Williams and defendant in error clearly appears from the evidence. There is also evidence from which the trial court may have found fraud in the nature of deceit and undue influence. At the time the contract was arranged between David Williams and defendant in error, both Williams and J. R. Roots, the middleman and witness, were aware that Bennett and Myers had foreclosed their mortgage. J. R. Roots testifies that this fact was made known to defendant in error before the attorney, Rockwell, was employed to formulate the contract. There is evidence tending to prove the reverse. The fact of the foreclosure was communicated to the attorney after the contract had been typewritten at his dictation, and he changed one page in consequence.

But, as shown by quotations above, the contract still represented that Williams was possessed of the property, and had a right to convey it, and would do so on approval of certain abstracts, by good and sufficient deed of warranty with full covenants. It is still claimed that Williams had an equity of redemption. These claims are all without foundation in fact.

It is insisted that Williams had an option from Bennett

and Myers to purchase the property back from them, which option he transferred to defendant in error, and lost in consequence. This claim is not supported by the evidence. The most that can be inferred from the evidence is that Bennett and Myers offered to sell this property back to Williams for eighteen hundred dollars. This offer was not accepted and could be withdrawn at any time. The only thing that appears in the nature of an option was purchased from Bennett and Myers by defendant in error himself. When it was made known to the attorney who was formulating the contract that Bennett and Myers had foreclosed their mortgage, and the attorney said that Williams had no title, and that deed must come from Bennett and Myers, defendant in error, accompanied by Mr. J. R. Roots, Mr. Jacob M. Murphy, and Mr. Martin Melhorn, went to Bennett and Myers. Defendant in error made a contract with Bennett and Myers for the purchase of the property from them for $1,800. He paid two hundred dollars down, and was given thirty days to pay the balance, the two hundred dollars to be forfeited if the balance was not paid. The balance was never paid. This two hundred dollars was certainly a liberal payment for the option. Taking his ranch property additionally by Williams on account of this option, would have been inequitable and unconscionable, even if Williams had had control of the option. It is still worse when we consider that Williams had no power to grant or withhold the option. It appears from the evidence that the mind of defendant in error was never disabused of the idea that Williams had some interest in and to the Denver property, which it was necessary for defendant in error to procure.

The contract contained a provision that either party failing to comply with its provisions should forfeit to the other $2,500. Williams was insolvent, and this provision consequently was of no avail as to him, but was as to defendant in error, who, it appears, was a man of some means. There is evidence tending to prove that defend-

ant in error was not aware of Williams's insolvency until informed of it by J. R. Roots, after the latter had delivered to Williams the deeds and other conveyances of the ranch property.

J. R. Roots received payment or security for his commission on the deal from defendant in error, who was led into this, partly, at least, by the promise of ten thousand dollars to be paid him as commission for promoting a smelter deal. This latter deal proved to be an ignis fatuus.

As a result of his dealings in the matter of this exchange of his ranch for Williams's Denver property, defendant in error has conveyed away his ranch. He has paid to Bennett and Myers $200. He has advanced $65 to be paid on account of interest to the Lombard investment company, and $25 for another matter connected with the deal. He has given his note for $500, with a bill of sale of thirty head of cattle to J. R. Roots for part of his commission. How the balance of the commission was settled, or how much it was, does not appear. For all this he has received nothing, and there does not seem to be a possibility that he can ever get anything. The man he traded with had nothing to trade. If the trial court had found specifically fraud, deceit, and undue influence, as well as want of consideration, we could not say that the finding would not be sustained by sufficient evidence. As to the beneficiaries in the several trust deeds which Williams executed for the ranch property upon acquiring title, all except Nancy J. Graham were present at some of the conferences resulting in the contract for the exchange of the properties, and confessedly understood the situation, and appeared to be assisting in bringing about the contract. This applies to J. R. Roots, J. M. Murphy, and Martin Melhorn. F. E. Roots was not the real party in interest in the note and trust deed made in her favor. The money thus secured was earned by and coming to her husband, J. R. Roots. Nancy J. Graham is the holder of a note and trust deed from Leanor Williams for

$3,500—a much larger amount than any of the other beneficiaries of the trust deeds of Williams's claim. She made no defense in the trial court, and does not join in the proceeding in error.

John H. Graham got an assignment from Leanor Williams of the contract for 420 acres of the land constituting part of the ranch of defendant in error. There is testimony from which the trial court might well find that John H. Graham was informed of the nature of the so-called deal between Williams and defendant in error, which so-called deal consisted in defendant in error giving up all his property and getting nothing in return, but being left in debt besides. Williams testifies in reference to his making the deal with defendant in error that Graham "understood it from the start." This, and other evidence, tends to show that the beneficiaries in the trust deeds, and Graham, the assignee of the land contract, took with knowledge of the equities of defendant in error, and knowledge of the weakness of Williams's titles, and do not occupy the position of innocent purchasers for value.

The implicit belief of defendant in error that he would receive what he contracted for is shown in his conduct in several instances which are now adduced in evidence against him. After Williams assigned the land contract to Graham, he took defendant in error to Graham's office. Graham asked defendant in error if certain papers (referring to the land contract and its assignments) were "straight." This was in September, and defendant in error testifies that he did not know of the assignment to Graham until next May, when he went to make payment to Gilchrist on the contract, and Gilchrist informed him that Graham and Wigton had paid the balance. It is insisted that defendant in error accepted the contract of Bennett and Myers to convey to him by special warranty deed the Denver property in discharge of Williams's contract to convey the property "by good and sufficient warranty deed with full covenants." It appears from the evidence that defendant in error did undertake to

purchase from Bennett and Myers the property which Williams had contracted to convey to him " by good and sufficient deed with full covenants." But we can not say that this amounts to a release of Williams from his obligations under the contract. It is rather to be regarded as assistance to him in complying with the terms of his contract — assistance which defendant in error could safely render if, as he had been informed, the price which Bennett and Myers asked added to the incumbrances on the property which would amount to more than $16,000. For he was to assume the payment of $16,000, and if the incumbrances did not amount to so much, he was to pay the balance to Williams. But that he ever agreed to accept title by deed of special warranty in lieu of the full covenants for which he contracted, is mere inference. No such agreement is proven. No consideration for any such agreement appears. The attorney who formulated the contract advised that he take title by deed from Bennett and Myers and quit-claim deed from Williams. The attorney was probably not informed at the time that a deed of special warranty was all that Bennett and Myers would give. Among other things tending to show that defendant in error was overreached and deceived from the beginning, is the fact that his contract with Williams was, in effect, though not in form, unilateral. It bound the parties in a penalty of $2,500. Defendant in error was a man of some means, apparently good for a greater amount than that. As J. R. Roots informed defendant in error some time after the execution of the contract, Williams had " not a cent." And Williams contracted with defendant in error, assuming to be the owner of the property. So firmly did this idea take possession of defendant in error that, when informed that Williams owned no interest in the property, and while he was purchasing it from Bennett and Myers, he was still willing to give Williams his ranch for what at most could be no more than his consent to the deal with Bennett and Myers and his good will, and further to pay Roots a

liberal commission for finding for him an opportunity to relieve himself of his property.

Upon the question of consideration, proof was offered tending to show that the Denver property was worth several thousand dollars above the incumbrances upon it. This would be satisfactory if defendant in error had received the property, or if Williams had tendered the title which he contracted to furnish. But he did not and could not do so, because he had contracted to convey the property of others as his own. There can be little doubt from the evidence that all of the beneficiaries in the several trust deeds which Williams placed upon the ranch property, and Graham, the assignee of the land contract, were aware of these facts. If they had been ignorant of them, and ignorant of the rights and equities of defendant in error, whether the antecedent indebtedness of Williams to them would have constituted them holders for value against defendant in error, is a vexed question, upon which the authorities are in conflict. But such ignorance upon their part, under the circumstances proven, is quite improbable.

The decree of the district court is affirmed.

GROESBECK, C. J., concurs.

(Potter, J., did not sit having been of counsel in the court below.)