## LEWIS, AS ADMINISTRATRIX, v. ENGLAND, AS ADMINISTRATRIX.

EVIDENCE—BOOKS OF ACCOUNT—PRESUMPTION THAT CHECKS AND NOTES ARE GIVEN IN PAYMENT OF AN ACCOUNT—SUFFICIENCY OF EVIDENCE TO REMOVE SUCH PRESUMPTION.

1. The law prescribes no regular method of keeping accounts to make them competent as evidence, but their competency in any case must depend upon the appearance and character of the books wherein they are entered, considered together with the degree of education of the party whose books they are, the nature of his business, the manner of his charges against other people, and all other surrounding circumstances.

2. To justify the reception of books of account as evidence of facts therein entered, they must appear to have been kept in the regular manner adopted for keeping accounts by the party whose books they are, and to contain the regular entries of his transactions in the usual course of business, made so near the time of the transactions as to establish the presumption that they were fairly and honestly kept.

3. In the place of business conducted by one unable to read or write, the debit charges were entered by his employes daily upon what were called "day slips," consisting of plain sheets of paper, the date being entered at the head of each sheet, which day slips were filed away, and at frequent though irregular periods were taken to the owner's residence, where his wife or some other person at his direction transferred the various charges to separate sheets of paper, ruled in ledger form and called "ledger slips," upon which the separate account of each individual debtor was entered under his own name. Upon the ledger slips were also entered for the first time numerous items, principally credits, that being the customary method employed in keeping the accounts. The figures on the day slips representing the amounts charged were usually without decimal or other marks to specify whether dollars or cents were intended, though the amounts were fairly indicated by the various entries, in connection with the subject of the charges, but the figures were clearly explained on the ledger slips in no way contradictory of the day slips in that respect. *Held*—

  (a) That the sheets aforesaid were to be regarded as books of account, kept with sufficient regularity in the general course of business, and with all persons with whom the party did business alike, to render them competent evidence as books of account.

  (b) That the day slips, so-called, were admissible as books of original entry.

  (c) That the ledger slips, so-called, were admissible to explain in case of doubt the figures appearing on the day slips, and as books of original entry as to those items entered therein originally without a previous entry on the day slips.

4. To the same extent that books of account are admissible in evidence as proof of the facts therein entered in respect to goods sold and delivered, and the like, they are admissible to prove money paid or loaned, where items of that character are entered in the general course of accounts, as a part of the regular course of business transacted.

5. While a negotiable note or order drawn by a debtor and accepted by the creditor is presumed to be an extinguishment of the original debt, such presumption may be rebutted or explained by agreement of the parties, or by proof of a usage, or of circumstances inconsistent therewith.

6. Uncontradicted evidence of an acknowledgment by a debtor of the correctness of a statement of his account then presented to him, and that he owed the amount shown thereby to be due, is sufficient to remove the presumption that certain bank checks and a note dated prior to that time, but not mentioned in the account as presented, were given in payment thereof.

7. Where an administratrix, who was sued upon an account against the decedent, produced several bank checks given during the period covered by the account by the decedent to the creditor, testimony of third parties familiar with the transactions, and able to identify the checks, that they were not given in payment of or to be credited on the account, but were given in exchange for money furnished at the time to the decedent to be used by him in paying his obligations to employes and others, the money so furnished not being charged in the account, held sufficient to show that the checks were given in separate transactions unconnected with the account, and sufficient to remove any presumption that they were given in payment upon the account.

'[Decided November 20, 1905.]    (82 Pac., 869.)

ERROR to the District Court, Carbon County, HON. DAVID
H. CRAIG, Judge.

This action was originally brought by Charles Lewis
against Mary England, as administratrix of the estate of
Richard England, deceased, upon an account against the
decedent. Upon the subsequent death of the plaintiff, the
cause was revived in the name of Ida Lewis, as adminis-
tratrix of the estate of Charles Lewis, deceased, as plaintiff.
The facts are stated in the opinion.

*W. R. Stoll,* for plaintiff in error.

It is well established that the term "book account," no
matter where the same is used, has only this legal sig-
nificance, *i. e.,* it is an account kept in the usual manner in
which a man keeps his accounts. Any one may keep his
accounts in any way he pleases, and so long as he keeps
an account of his business transactions in such a way as
pleases him, and so long as that way is applicable to all and
is the usual and ordinary method of keeping his accounts,
the accounts so kept constitute what is known in law as his
book of accounts. (Hay, Ex., v. Peterson, 6 Wyo., 419;
Nugent v. Powell, 4 Wyo., 173; Board v. Stone, 7 Wyo.,
280; 9 Ency. L. (2d Ed.), 877-943; 1 Thomp. on Tr., 401,
840; Wood's Prac. Ev., 139, 409; 1 Greenleaf on Ev. (16th
Ed.), 120; 1 Whart. on Ev., 238; 1 Cyc., 496-500.)

Where an account is once established as an account, and
that account on its face remains open and bears no evidence
of settlement, the burden rests upon the party against whom
the account is carried on to show whether the same is paid
or settled. (Authorities *supra,* and Wood's Prac. Ev., 66.)

It is a general proposition that when one writing is com-
plementary or explanatory of another, the two form but one
document and both are admissible in evidence. One is ex-
planatory of the other. In the matter of accounts, if one's
system of keeping his accounts is such that the day slips, for
instance, do not fully set forth all of the facts, or the charges,
for instance, do not state whether the same are dollars or

cents, and at the same time he keeps other documents as, for instance, ledger slips which are a repetition of the day slips but made in a more thorough and complete manner so that they explain and identify the day slips, the ledger slips are admissible as a part of the system of keeping the accounts which was used by the party, and this upon the principle that the ledger slips so made are complementary to the day slips.

Besides this, the person against whom an account is introduced is always entitled as a matter of right to call for the production of the ledger account, and this even where the day book and the ledger are kept in the most scientific manner.

In the case at bar the slips themselves as well as all other testimony in the case conclusively establish the fact that it was never Mr. Lewis' custom to enter credits upon the day slips, and certain charges were made originally on the ledger slips and not on the day slips. Also for this reason, the ledger slips become complementary to the day slips and are admissible in evidence for this reason alone.

It is equally elementary that an account may be introduced in evidence even though it is kept simply in the form of a ledger account, and not in the usual form of day accounts. (1 Whart. on Ev., Secs. 618, ·619, 620, 686; 2 Whart. on Ev., 1103-1105; 9 Ency. L. (2d Ed.), 921, 922; In re McGoldrick v. Traphagen, 88 N. Y., 334; Hughes v. Clark, 109 Ill. App., 107; Montague v. Dougan, 68 Mich., 98; Farley v. Gibbs, 4 N. Y. Supp., 353; Alling v. Wenzell, 27 Ill. App., 511; Dows v. Naper, 91 Ill., 44.)

*N. R. Greenfield,* for defendant in error.

If the day slips and ledger slips are to be considered as books of account, they cannot be explained by oral testimony. (Lipscomb v. Lyons, 19 Neb., 511; Martin v. R. R. Co., 1 Wyo., 148; Kennedy v. Ankrin, Tappan 40 (Ohio); Baldridge v. Penland, 68 Tex., 441.) The giving or taking negotiable paper such as notes· and checks, is *prima facie*

evidence of payment of debt. (Masser v. Bowen, 29 Pa.,
126; Hansen v. Kirtley, 11 Ia., 585; Whisler v. Drake, 35
Ia., 103; Sherman v. Clatter, 40 Tenn., 445; Morse v. El-
lerbe, 4 Rich. Law, 600; Jesse v. Davis, 34 Mo. App., 351;
Bangher v. Conn, 17 Phila., 8; Shumway v. Reed, 34 Me.,
560; Bangor v. Warren, 34 Me., 324; Mellege v. Boston
Iron Co., 51 Am. Dec., 59.)

In order to secure the admission of the ledger slips as
complementary to the day slips the offer should have been
limited to that purpose. (Fitzgerald v. McCarty, 55 Ia.,
702; May v. Cross, 95 Ia., 258; Loveringe v. Dayton, Fed.
Cas. No. 8288.)

We may admit that there is no law compelling a man to
keep his account books in a certain manner, but we insist
that in order to recover on his account book in a suit at law,
the book must comply with certain well defined and well
known rules of law, viz. (1) That the entries relate to arti-
cles sold or services rendered in the regular course of busi-
ness. (Leach v. Sheppard, 5 Vt., 363; Laboree v. Kloster-
man, 33 Neb., 150.) (2) That it is a book of original entry.
(15 Am. Dec., 196.) (3) That it be such a regular and
usual account book as explains itself and as appears on its
face to create a liability in an account with the party against
whom it is offered. (Wilson v. Goodin, Wright (Ohio),
219; Van Every v. Fitzgerald, 21 Neb., 36.) (4) That the
entries were made at or about the time of the transaction,
and are not a recital of past transactions, in other words they
are only admitted on the ground that the entries were a part
of the acts they purport to record. (15 Am. Dec., 191-196;
Bentley v. Ward, 116 Mass., 333; Griesheimer v. Tanen-
baum, 124 N. Y., 650; 30 Am. Dec., 142.) (5) The book
must be a record of such entries as are properly a subject of
book account; items for cash advanced or money loaned are
generally not considered as evidence. (Smith v. Rentz, 131
N. Y., 30; Inslee v. Prall, 23 N. J. L., 457; Security Co. v.
Craybeal, 85 Ia.; Hugh v. Hock, 8 Ohio Cir. Ct., 354.)

The case at bar must be measured by Section 3683, Re-
vised Statutes. The case of Hay v. Peterson has construed

that portion of the statutes applicable to this case. The following Ohio decisions have also construed that section. Book of account must be book of original entry, contemporaneous with the transaction, and money loaned is not the subject of book account. (28 O. St., 84; 24 C. C., 62; 6 Bull., 299; 20 C. C., 287; 3 O. D., 10; 4 C. C., 289; 12 C. C., 574; 8 C. C., 354; 2 C. C. N. S., 343; 19 C. C., 425; 5 O. D., 480; 26 Bull., 265; 5 C. C., 19.)

The manner of keeping accounts in a book of accounts is an important consideration, though the form and construction of the book itself is immaterial, other than as affecting its credibility. (Moore v. Morrise, 1 Penn., 412; Dunlap v. Hooper, 66 Ga., 211; Hooper v. Taylor, 39 Me., 247; Boohout v. Shannon, 59 Miss., 378; Cummings v. Nichols, 13 N. H., 420; Irwin v. Jordan, 7 Hump., 167; Bell v. McLeran, 3 Vt., 185.) Another requisite necessary to the admissibility of a party's books of account in evidence in his own favor, both at common law and under the statutes, is that the entries must have been the first permanent record of the matters contained therein. (Fendall v. Billy, 1 Cranch C. C., 87; Dismukes v. Tolson, 67 Ala., 386; Watrous v. Cunningham, 71 Cal., 30; Lovelock v. Gregg, 14 Colo., 53; Moore v. Morris, 1 Pa., 412; Hooker v. Johnson, 6 Fla., 730; Talbotton R. Co. v. Gibson, 106 Ga., 229; Ruggles v. Gatton, 50 Ill., 412; McDavid v. Ellis, 78 Ill. App., 381; Arney v. Meyer, 96 Ia., 395; Shaffer v. McCracken, 90 Ia., 578; U. S. Bank v. Burson, 90 Ia., 191; Security Co. v. Graybeal, 85 Ia., 543; Lawhorn v. Carter, 11 Bush., 7 (Ky.); Hooper v. Taylor, 39 Mo., 224; Cogswell v. Dolliver, 2 Mass., 217; Moody v. Roberts, 41 Miss., 74; Owen v. Bray, 80 Mo. App., 526; Martin v. Scott, 12 Neb., 42; Remick v. Rummery, 69 N. H., 401; Inslee v. Prall, 23 N. J. L., 457; Vosburgh v. Thayer, 12 Johns., 461; Skipworth v. Doyell, 83 Hun, 307; Winne v. Hillis, 91 Hun, 89; Baxter v. Loith, 28 O. St., 84; Bishop v. Goodhart, 135 Pa. St., 374; Fulton's Estate, 178 Pa. St., 78; Geiger's Appeal (Pa.), 16 Atl., 851; Cargill v. Atwood, 18 R. I., 303;

Underwood v. Parrot, 2 Tex., 168; Baldridge v. Penland, 68 Tex., 441; Bupp v. O'Connor, 1 Tex. Civ. App., 328; Wyman v. Wilcox, 66 Vt., 26; Hay v. Peterson, 6 Wyo., 419.) Upon the point that a book containing transcribed items of account, taken from the book of original entries, cannot be used as evidence of the correctness of the account, see: *In re* Houston's Estate, 167 Pa. St., 217; Fairchild v. Dennison, 4 Watts (Pa.), 255; Flato v. Brod, 37 Tex., 734; Price v. Garland, 3 N. M., 285; Woolsey v. Bohn, 41 Minn., 235; Guthrie v. Mann (Tex.), 35 S. W., 710; Clark v. Bullock, 2 N. Y. Supp., 408. The ledger slips in the case at bar are not admissible in evidence, not coming within the rule of being a book of original entries. (Bk. v. Chaffin, 118 Ala., 246; Bracken v. Dillon, 64 Ga., 243; Stickle v. Otto, 86 Ill., 161; Bk. v. Williams, 4 Ind. App., 501; Estes v. Jackson, 53 S. W., 271; Stetson v. Wolcott, 15 Gray, 545; Cahill v. Hirshman, 6 Nev., 57; Griesheimer v. Tanenbaum, 124 N. Y., 650; Ahl v. Ahl, 176 Pa. St., 466; *In re* Houston's Estate, 167 Pa. St., 217; Fitzgerald v. McCarty, 55 Ia., 702; Jones v. Henshall, 3 Colo. App., 448.) An entry not of a particular transaction, but what remains due as a balance, does not come within the rule defining original entries. (McClintock's Appeal, 58 Mich., 152; Baldridge v. Penland, 68 Tex., 441.) Entries made from information received or derived from other parties or memorandum should not be admitted. (Goodwin v. O'Brien, 25 N. Y., 203; Clough v. Little, 3 Rich. Law, 353; White v. Wilkinson, 12 La. Ann., 359; Countryman v. Dunker, 101 Mich., 218.)

Again, the transactions, of which the entries purport to be a record, must have been transactions which took place within the regular course of the business of the party, otherwise the books are not admissible. (Barton v. Dundas, 24 U. C. Q. B., 273; Dickson v. Motor Co., 52 Ill. App., 379; Sanford v. Miller, 19 Ill. App., 536; Karr v. Strivers, 34 Ia., 123; Arney v. Meyer, 96 Ia., 395 (65 N. W., 337); Whistler v. Drake, 35 Ia., 103; Hart v. Livingston, 29 Ia.,

217; Moody v. Roberts, 41 Miss., 74; Ryan v. Dunphy, 4 Mont., 356; Barnet v. Steinbach, 1 W. N. C. (Pa.), 335; Kotwitz v. Wright, 37 Tex., 82; Thayer v. Deen, 2 Hill Law (S. C.), 677.) The books are not competent to prove the debt of third persons for which England was charged. (Silver v. Worcester, 72 Me., 322; Kerr v. Love, 1 Wash. (Va.), 172; Kinloch v. Brown, 1 Rich Law (S. C.), 223; Thompson v. Porter, 4 Strob. Eq. (S. C.), 58; Field v. Thompson, 119 Mass., 151; Kaiser v. Alexander, 144 Mass., 71; Winslow v. Dakota Lum. Co., 32 Minn., 237; Greene v. Burton, 59 Vt., 423; Mackey v. Smith, 21 Ore., 598.) The items for cash advanced to England from time to time by Lewis cannot be established by an account book, for the reason (1) that Lewis was not in the money loaning business, and (2) because items for cash advanced are not properly subjects of book account, unless expressly so provided by statute. (Gantler v. Jenks, 76 Mich., 510; Lester v. Thompson, 91 Mich., 245; Woolsey v. Bohn, 41 Minn., 235; Winner v. Bauman, 28 Wis., 563; Shaffer v. McCracken, 90 Ia., 578; Peck v. Jones, Kirby (Conn.), 289; Brannin v. Voorhees, 14 N. J. L., 590; Milligan v. Bruce, Fed. Cas. No. 9602; Jones v. Henshall, 3 Colo. App., 448; Harold v. Smith, 107 Ga., 849; Bracken v. Dillon, 65 Ga., 243; Boyer v. Sweet, 4 Ill., 120; Brannin v. Force, 12 B. Mon., 506; Maine v. Harper, 4 Allen, 115; Atwood v. Barney, 80 Hun, 1; Irvine v. Wortendyke, 2 E. D. Smith, 374; Morgan v. Hubbard, 66 N. C., 394; Hess' Appeal, 112 Pa. St., 168; Parris v. Bollows, 52 Vt., 351; Wells v. Ayers, 84 Va., 341; Lyman v. Becktel, 55 Ia., 437; Stevens v. Cowan, 61 N. Y. Supp., 925; Hauser v. Levinesse, 62 N. J. L., 518; Oberg v. Breen, 50 N. J. L., 145; Snell v. Eckerson, 8 Ia., 284; Founce v. Gray, 21 Pick., 243 (Mass.); Smith v. Rentz, 131 N. Y., 169; Gleason v. Kinney, 65 Vt., 560; Marsh v. Case, 30 Wis., 531; Hay v. Peterson, 6 Wyo., 419.)

Another rule of law relative to account books and with which the day slips in this case do not comply, is that they must show a charge by one person against another. (Mar-

tin v. Scott, 12 Neb., 42; Master v. Marsh, 19 Neb., 455; Van Every v. Fitzgerald, 21 Neb., 36; Pollard v. Turner, 22 Neb., 366; Goodhart v. Bishop, 135 Pa. St., 374; Baldridge v. Penland, 68 Tex., 441; Appeal of McNulty, 135 Pa. St., 210; Bartlet v. Morgan, 4 Wash., 723.)

While the items on the day slips that have been transferred to the ledger slips have a line drawn through them, a number of items on the day slips are so scratched and blotted that it is almost impossible to tell what the figures originally were, and these items have not been transferred to the ledger slips, yet they must be considered as part of the original entries, since they are unexplained. (Seligman v. Ten Eckys Estate, 53 Mich., 285.)

The authorities cited by counsel sustain the view that it is the right of the adverse party to call for the ledger or other complementary document to be introduced in evidence, but in the cases such as at bar, it has always been held that in the first instance the plaintiff must stand or fall on the case made by the books of original entry. The adverse party can, of course, introduce the ledger to disprove the accuracy of the day book, or to show items of credit and so forth, which do not appear in the day book, but plaintiff cannot be allowed to bolster up a weak set of day books by putting in evidence his ledger.

VAN ORSDEL, JUSTICE.

On November 21, 1901, Charles Lewis, as plaintiff, brought an action in the District Court of Carbon County against the defendant in error, alleging that Richard England during his lifetime and on the 26th day of May, 1901, was indebted to the plaintiff in the sum of $1,821.95, for balance due on an account for goods sold and delivered, and for divers sums of money advanced to the said England by the plaintiff. The petition further alleges that Richard England died intestate on the 26th day of May, 1901, and thereafter the defendant in error was duly appointed administratrix of the said England's estate; that on the 18th day of November,

1901, the account sued upon, verified as required by law, was presented to the defendant as administratrix and by her rejected and disallowed. The defendant answered admitting the allegations of the petition as to her appointment as administratrix and the presentation of the account, but denying all other allegations contained in the petition. On December 12, 1901, the court appointed John S. Williams, Esq., as special master commissioner to take the testimony in the case in writing, to hear the evidence, and to report the same to the court with his conclusions of law and fact. Under this order all the evidence was taken before the commissioner. On the 12th day of May, 1902, the plaintiff, Charles Lewis, died, and on December 2d following the case was revived in the name of the plaintiff in error, she having in the meantime been appointed administratrix of his estate. Before the commissioner made his report he resigned, and L. E. Armstrong, Esq., was on the 8th day of January, 1904, appointed in the place of said Williams with instructions to report his conclusions of law and fact to the court. Armstrong made his report on February 25, 1904, finding generally for the defendant and assigning his reasons for so finding. On the 14th day of March following the court approved and confirmed the report and findings of the commissioner in all respects, and entered judgment generally against the plaintiff and in favor of the defendant. From this judgment plaintiff prosecutes error to this court.

The original plaintiff, Lewis, was a saloon keeper at Medicine Bow, and, being unable either to read or write, was obliged in the conduct of his business to intrust the keeping of his accounts to others. The evidence discloses that the accounts were kept by his employes, by his wife, and in two instances by school teachers who lived at his house. It also appears that regular books of account, as the term is generally understood, were not kept by the plaintiff. At the saloon there was kept what was called a tablet consisting of plain sheets of paper. Each day there was entered on the tablet the charges that were made against various parties

during that day, the date being entered at the head of each sheet as the same was used. These entries were made principally by persons employed by Lewis attending bar and looking after matters generally connected with the conduct of his business. Each day the sheets containing the charges for the day's business were filed away, and at frequent periods these day slips, as they were called, were taken to Lewis' house and there transferred to other slips of paper called ledger slips. The ledger slips in question in this case contained the following heading: "Mr. R. England to Charles Lewis, debtor, Proprietor of the Elkhorn Saloon. Wines, Liquors and Cigars." The slips were ruled in ledger form, the column to the left for the date, and the columns to the right for dollars and cents. The day slips contained charges made against different individuals in the order in which sales were made in the regular course of business. These charges, on being transferred to the ledger slips, were entered against the individuals separately; in other words, the account of each individual was entered on the ledger slips under his name. The day slips and ledger slips were both offered in evidence by the plaintiff and objected to by the defendant. It was contended by counsel for defendant that the day slips and ledger slips had not been kept in such a manner, as books of account, as to entitle them to admission as evidence. The commissioner in his findings admitted the day slips, but refused to admit the ledger slips on the ground that they did not constitute books of original entry. The failure of the commissioner to admit the ledger slips is assigned as error.

It appears from the evidence that, in the regular course of business, it was customary for the persons in charge of the ledger slips, under the direction of Lewis, to enter certain items of account originally on the ledger slips, and a comparison of the day slips and the ledger slips discloses the fact that there appear to be numerous items, principally credits, appearing upon the ledger slips which do not appear upon the day slips. This was explained by a number of

witnesses, who at different times had charge of the accounts, as being the customary method employed by Lewis in the keeping of his accounts. The law prescribes no regular mode or method in which accounts must be kept in order to make them competent as evidence. The question of competency must be determined by the appearance and character of the book, regard being had to the degree of education of the party, the nature of his business, the manner of his charges against other people, and all other surrounding circumstances "The material, form and construction of the book offered in evidence as the book of original entries are unimportant, provided such book be capable of perpetuating a record of events, and the entries are made in conformity with the general rules governing the admissibility of such entries. Thus a notched stick, a shingle, or scraps of paper, have been received as books." (9 Am. & Eng. Ency. Law (2d Ed.), p. 917, and cases cited.) Certain essential requirements, however, must be observed in order to justify the reception of books of account as evidence. It must appear that they were the regular method of keeping accounts adopted by the party, containing the regular entries of his transactions in the usaul course of business, and made so near the time of the transactions as to establish the presumption that they were fairly and honestly kept. In Mississippi it was held: "The rule is that to authorize the introduction of books of account as evidence of facts entered, it must be shown that they have been fairly and honestly kept; that they are the books of the party engaged in the business to which they refer; that the entries were made in the usual course of business, at or about the time the facts entered transpired; that the entries are original and made by a party having knowledge of the facts entered, or that information thereof was communicated to the party by whom the entries were made by some person engaged in the business whose duty it was to transact the particular business and make report thereof for entry on the books, and such report and entry must be made at the time of the occurrence or before

the facts can be supposed to have passed from his recollection." (Chicago R. R. Co. v. Provine, 61 Miss., 288.) We are of the opinion that the evidence sufficiently discloses in this case that the books of account of Lewis were kept with sufficient regularity in the general course of the transaction of his business, and with all persons with whom he did business alike, to render them competent evidence in this case. The day slips hving been admitted in evidence, the plaintiff has no complaint as to their admission, but it is contended that the ledger slips should likewise have been admitted. As above stated, the ledger slips contain many original entries. These entries were sometimes made at the direct request of Lewis or from scraps of paper containing a memorandum of the item or items to be charged. It is clear that the ledger slips, if competent evidence could only be so in so far as they contain accounts of original entry, or are explanatory of accounts appearing on the day slips. It appears that the amounts charged upon the day slips were indicated by figures, usually without decimal marks, or other specific indication as to whether the figures represented dollars or cents, though we think the various entries on the day slips, taken together and in connection with the subject of the charges, fairly show the meaning of the several figures. When entered upon the ledger slips the figures are clearly explained, and in no way contradictory of the day slips in that respect, hence for the purpose of explaining such figures in case of doubt, the ledger slips were admissible. (McGoldrick v. Traphagen, 88 N. Y., 334.) We are, therefore, of the opinion that the ledger slips were admissible for these purposes. In La Rue v. Rowland, 7 Barb., 107, the court said: "Books of account, to some extent, partake of the nature of documentary evidence, in respect to which it is the cardinal rule that part of an instrument cannot be received while part is withheld. The whole must be taken together. So, I think it is with regard to books of account. All the books containing entries relating to the account, when relied upon as furnishing evidence to sustain the account,

should be produced." (See also Greenleaf on Evidence (16th Ed.), Sec. 120.) In 9 Am. & Eng. Ency. Law (2d Ed.), p. 918, the following rule relating to books of original entry is announced: "The fact that the entries in books of account offered in evidence were, in the first instance, made on a slate or other material, contemporaneously with the transactions to which they relate, and were subsequently transcribed into the books in regular form, does not destroy the character of such books as books of original entry, where such minutes were made merely as memoranda to assist the memory until the transfer of the items to the books, and were not intended to be permanent." These authorities seem to apply to the conditions, relative to the competency of the ledger slips, as disclosed by the evidence in this case. We are clearly of the opinion that it was error to refuse to admit the ledger slips as evidence for the purposes above stated.

The account sued upon contains numerous items of cash advanced from time to time. It appears from the evidence that England was in the habit of borrowing from Lewis small amounts of money at various times. These cash items were sometimes entered upon the day slips, but frequently they were only entered upon the ledger slips, as the evidence discloses that the money was often procured by England at the house, either from Lewis or from Mrs. Lewis, who testified that her husband had directed her to give England money when he requested it. It was held by the commissioner that these cash items were not proper items of book account, and, therefore, the books could not be considered as competent evidence against the defendant as to such items. There are authorities which hold that there is not and never was a necessity for making books of account evidence of the payment or the lending of money (Inslee v. Prall's Executor, 23 N. J. L., 463) ; but we think the great weight of modern authority is to the effect that where cash entries appear in the general course of accounts, as a part of the regular course of business transacted, that such entries should be admitted as competent evidence. As stated by Kilpatrick, Chief Jus-

tice, in Wilson v. Wilson, I Halst., 99: "Upon principle I can see no reason why a book should be lawful evidence of one item and not of another; why it should be evidence of goods sold and delivered, and not of money paid or advanced. Why should there be witnesses called or receipts taken in the one case more than in the other? If necessity be pleaded for the one, may it not for the other also? For they are both transactions in the common course of business, equally necessary, and, I should think, equally frequent or nearly so." (See also Wigmore on Evidence, Secs. 1548, 1549.) In Hay, Executor, v. Peterson, 6 Wyo., 418, this court said: "There are respectable courts that hold that a debtor's books of account are not evidence to prove payments by him to his creditors, yet the liberal tendency of modern decisions is in the other direction." The cash items contained in this account for money loaned by Lewis to England were improperly rejected by the commissioner.

The only evidence offered on behalf of the defendant consisted of forty-eight checks from England to Lewis aggregating in amount about $3,000, and one promissory note from England to Lewis for $125. The note and checks in question were all dated within the time embraced in this account. No objection was interposed by plaintiff to their introduction. It is contended by the defendant that the note and checks create a presumption that the same were given in payment of the account sued upon, and the commissioner so held and seems to have balanced the account of the plaintiff by the note and checks. While it is true that a negotiable note or order drawn by a debtor and accepted by the creditor is presumed to be an extinguishment of the original debt, this presumption may be rebutted or explained, by agreement of the parties, or by proof of a usage, or of circumstances inconsistent therewith. (Varner v. Nobleborough, II Am. Dec., 48.) It was held in Missouri that in an action on a long account against an estate, the bank checks of decedent, to the order of plaintiff and endorsed by plaintiff and shown to be paid by the bank and

bearing the date within the period covered by the account, are admissible in evidence for what they are worth as tending to show payments on the account. But if the checks are related to other transactions, it is competent for the plaintiff to show that fact. (Jesse v. Davis, Admr., 34 Mo. App., 351.) It is disclosed by the evidence, that England employed large numbers of men from time to time, and transacted business that required the use of cash; and several witnesses, who were in the employ of Lewis during the period covered by this account, testified that it was customary for England to get Lewis to cash his checks for the purpose of paying off men in his employ and for other purposes. The checks introduced in evidence were drawn on banks in Carbon, Rawlins and Laramie, but none on a bank at Medicine Bow, where these transactions all occurred. This would lead to the inference that there was no bank at Medicine Bow, or nearer than Carbon, Rawlins or Laramie. We do not consider it an uncommon occurrence for men, needing ready money in their business, in the absence of a bank, to get checks cashed at a neighboring place of business. In fact this is a very common custom in modern business transactions. Since Lewis could not write, these checks were endorsed in some instances by persons in his employ and sometimes by others at his request. The witness Walters, an employe of Lewis, and who had for a time charge of his accounts, identified twenty-one of the checks, aggregating $1,082.40, as checks that he had endorsed at the request of Lewis. He testified positively that none of these checks, or any part of them, were given in payment of the debt which England owed Lewis, except as the same were entered on the account to the credit of England. He further explained that most of the checks were used for paying off the men who had been employed by England, it being the custom of England to get money from Lewis for this purpose, giving Lewis a check therefor. A check for $500 given by England July 7, 1899, which appears on the ledger slips as follows, "Credit $281.75, balance of check after paying J. Johnson $64, W. Zeal $94.25,

Ed Walters $60.00," was explained by the same witness to mean that after paying Johnson and Zeal, who were employes of England, the amounts specified, and the witness $60 for borrowed money, it left a balance of $281.75, which was credited to this account. A check for $400, dated November 25, 1897, is explained, we think, with sufficient clearness, to apply on a former account, except $3.60 which was credited upon this account. Charles La Taurette, another witness who had been in the employ of Lewis, and assisted him in keeping a portion of the accounts in controversy, identified five of these checks, aggregating $210, as checks that he had endorsed for Lewis. He also testified that England was in the habit of getting checks cashed by Lewis for the purpose of paying men in his employ, and that none of these checks were given in payment of indebtedness to Lewis, except as they appear as credits upon his account. Mrs. Lewis identified seven of these checks by reason of the fact that she endorsed thereon the name of Charles Lewis, and testified that they were given in exchange for cash delivered to England, and did not constitute any part of the account sued upon. Witnesses who were connected with the keeping of the accounts were introduced by the plaintiff, who identified all the checks excepting to the amount of $246.75, by reason of the fact that they had endorsed the name of Charles Lewis thereon, and each of these witnesses except one explained that the checks were given by England in exchange for money at the time given to him by Lewis, and that they constituted no part of this account, except in so far as they had been credited on the account. There were three checks aggregating $112.80 identified by Charles Lewis, Jr., by reason of his having endorsed his father's name thereon, who testified that he did not know the purpose for which these checks were given. This would leave checks aggregating $359.55 and the note for $125 unexplained, excepting by the general testimony of the witnesses who kept the accounts of Lewis during this period, who testified that the charges against England and the credits in his favor, as they appeared on said accounts, were correct.

While the large account of plaintiff should be scrutinized with the utmost caution, evidence that is competent should not be excluded, when no rule of law relating thereto has been violated. There is considerable evidence in this case, independent of the day and ledger slips, tending strongly to establish the honesty of plaintiff's demand. A number of witnesses testified as to admissions made by England of his indebtedness to Lewis. The witness La Taurette testified that in his presence Lewis presented a statement of the account to England on the 17th day of February, 1901, or within about three months of the date of England's death, and that England acknowledged that he owed the bill and that the same was correct. This statement was identified by the witness and introduced in evidence and shows a balance due from England to Lewis on that date of $1,625.95. We are of the opinion that the uncontradicted evidence of the acknowledgment of this account on the 17th day of February, 1901, is sufficient to remove any presumption that the note and checks dated prior to that time were given in payment of the account sued upon. Between the date of the rendering of this statement and the death of England eleven of the checks in question were given aggregating in amount $163.30. Six of these were included in the list explained by the witness Walters, and one in the list explained by Mrs. Lewis, leaving four checks aggregating $90.90 unexplained by any direct evidence. We think, however, that the evidence, viewed in its entirety, sufficiently shows that the checks were given in separate transactions, generally unconnected with this account, though it appears that a balance on some of them was credited to the account; and, except where such credit appears, we are of the opinion that the evidence is sufficient to remove any presumption that the checks were given in payment of plaintiff's claim.

The judgment of the District Court is reversed, and the cause remanded for a new trial, in accordance with the views expressed in this opinion.

POTTER, C. J., and BEARD, J., concur.