## SCHUMAN CARRIAGE COMPANY, LIMITED, AN HAWAIIAN CORPORATION, *v.* S. S. PAXSON, DEFENDANT; ROYAL HAWAIIAN GARAGE, LIMITED, AN HAWAIIAN CORPORATION, ET AL., GARNISHEES.

### No. 1368.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. C. S. FRANKLIN, JUDGE.

ARGUED JANUARY 26, 1923.              DECIDED MAY 19, 1923.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE BANKS
IN PLACE OF PETERS, C. J., DISQUALIFIED.

EVIDENCE—*books of account—admissibility.*

Defendant was manager or assistant manager of the plaintiff corporation. It appearing from the evidence that the salary of defendant was not paid to him at regular, stated intervals but his account in the company's books was credited monthly with the same and debited from time to time with cash withdrawn, cash paid to others for his account, and for goods purchased from the company, this appearing to be the ordinary course of business between the parties, in an action of assumpsit brought by plaintiff against defendant to recover a balance alleged to be due, the books of the plaintiff were admissible to prove cash transactions between the parties.

SAME—*admission.*

In an action of assumpsit brought by a business corporation to recover from defendant for a balance alleged to be due for goods sold and delivered, cash loaned and advanced to defendant and cash paid to others for and on account of defendant, it appearing that defendant was either the manager or assistant manager of the plaintiff corporation, had access to and frequently consulted the books of the company and never questioned nor objected to the account standing against him in the company's books, *held,* that the books of the plaintiff corporation and the entries charged · therein to the account of defendant are admissible as evidence of an ad-

mission by defendant of the correctness of the charges in said account.

SAME—*error cured.*

Where the books of the plaintiff corporation were, over the objection of defendant, received in evidence for the purpose of showing certain cash charges against defendant made in such books in the ordinary course of business and the defendant thereafter testified that he had never denied that he had received the cash charged to him in said books, it further appearing that in his opening address counsel for defendant told the jury that he did not dispute the cash items included in said account, *held,* that if the books of account had been erroneously admitted such error was cured by the subsequent action of defendant and his counsel.

SAME—*sufficiency of to support verdict.*

It appearing that there was ample evidence in support thereof the verdict of the jury in favor of plaintiff cannot be disturbed.

SAME—*wages—work and labor—reasonable value for services rendered.*

In a claim for what the services of the claimant were reasonably worth by way of wages for work and labor performed, where it is apparent that the verdict of the jury was based upon an express contract between the parties for a specific wage the exclusion of evidence as to what the services of the claimant were reasonably worth, *held,* not prejudicial.

OPINION OF THE COURT BY LINDSAY, J.

The plaintiff, an Hawaiian corporation, brought an action of assumpsit against defendant for the recovery of $2254.08 (afterwards amended to $2434.08), the declaration containing counts for money lent, advanced and paid out by plaintiff to, for, or on account of defendant; for goods, wares and merchandise sold and delivered by plaintiff to defendant; and upon an account stated. Defendant answered, denying all of the allegations of the complaint, and alleging by way of set-off and counter-claim that plaintiff was indebted to him in the sum of $3000 for work and labor performed by defendant for plaintiff at the special instance and request of plaintiff. The jury returned a verdict in favor of plaintiff and find-

ing against the set-off and counter-claim of defendant. The cause comes here on 470 exceptions to various rulings of the trial court and to the verdict of the jury.

In the bill of particulars, filed by plaintiff upon motion of defendant, which purports to be a record of the business transactions between the parties as revealed by the books of the corporation for the period from April 15, 1915, to February 25, 1918, defendant is credited with salary and with dividends earned on the shares of stock held by him in the plaintiff corporation, and is debited with cash purported to have been paid to him and to others for his account, also with sundry goods purchased from the company leaving a balance due to plaintiff by defendant, when he left the employ of the company, of $2254.08. During the trial defendant repudiated a credit of $180 allowed in the bill of particulars, whereupon plaintiff amended his claim to $2434.08, which amount was found by the verdict of the jury to be due and owing by the defendant to plaintiff.

To prove the amount owing by defendant, plaintiff, over the objection of defendant, was permitted to produce in evidence its books of account and particularly the account of defendant and entries therein purporting to show various cash transactions between the parties. It is contended that the trial court erred in this respect and a large number of exceptions are on this ground. The contention of defendant is that the books of the plaintiff are not admissible to prove charges for money lent or advanced to defendant or paid to others on his account.

In the ordinary case of a merchant seeking to prove an alleged claim against a stranger to the business, the merchant's books of account kept in the ordinary course of business are, under the so-called "shop book" rule, competent evidence to prove the sale and delivery of goods, wares and merchandise. Such books, however, are

generally not admissible to prove cash transactions between the parties. "The rule  *  *  *  is that books or original entries are not admissible for the purpose of proving the payment of money, unless the payment of money come within the ordinary business of the party on whose behalf books are offered." *Lyman* v. *Bechtel,* 7 N. W. 673, 674. The case of *Inslee* v. *Executor of Prall,* 3 Zab. (N. J.) 457, contains the following lucid statement of the "shop book" rule: "Books of account cannot be received in evidence in New Jersey to prove the payment of money. Nor are they evidence of money lent; the *necessity* of admitting them as evidence of goods sold, services rendered, and other matters in the usual course of business, for which the common law rule has been relaxed, does not exist in case of payments or advance of money."

The rule thus enunciated, however, is not without exceptions, and cases do exist in which the rule is inapplicable, for example, where the parties themselves have adopted such a course of dealing with each other as to raise a presumption that they contemplated that book entries, purporting to record cash transactions between them, should be considered evidence of such transactions. "Such a special course of dealing may exist between parties as to render entries admissible which would otherwise be incompetent, in order words, the *usage and conduct* of the parties may have been such as to create an implied contract that their dealings may be proven in such mode." Jones on Evidence, Sec. 568. In the case of *Veiths* v. *Hagge,* 8 Ia. 163, the court, in discussing the rule as to the admissibility of books kept in the ordinary course of business, defines "the ordinary course of business" thus: "This means, the ordinary course of business between the parties to the suit" and further, a witness having testified that defendant was in the habit of bor-

rowing sums of money from the plaintiff from time to time which were charged in the books, the court said, p. 174: "The entries being thus proved to have been made 'in the ordinary course of business,' were competent evidence to prove the items." The case of *Cargill* v. *Atwood,* 18 R. I. 303, was assumpsit for goods sold and delivered to, work and labor done and performed for, and cash advanced to John M. Cargill, defendants' testator in his lifetime. The court, p. 304, said: "The second contention of the defendants is that the items charged as cash in said account should not have been allowed, as they were not proper subjects of book account. It is doubtless true that cash loaned or advanced is not ordinarily the proper subject of book account, except at any rate, to a very limited amount; *Burns* v. *Fay,* 14 Pick. 8; *Kelton* v. *Hill,* 58 Me. 114; *Bassett* v. *Spofford,* 11 N. H. 167; yet where in the ordinary course of business between the parties, cash advances as well as payments are made the subject of book account, we see no reason for holding that such items may not as well be entered on and proved by the books as the ordinary items of account may be. That is to say, where the parties are in the habit of treating cash items, both on the debit and credit side of the account between them, as the proper subject of such account, the proof of the loan or advancement of money on the one side, or of the payment on account, of the same on the other, may be made by the production of the books, to the same extent as may the proof of the delivery of any other article. Wood's Practice Evidence, Sec. 144. Under the proof in this case we think it was properly left to the jury to determine whether or not the cash items were proper subjects of book account." In the instant case the relations between plaintiff and defendant were in no wise similar to those usually existing between the ordinary debtor and creditor. The plaintiff is a corporation

engaged in the sale of automobiles and automobile acces-
sories, G. A. Schuman, who owns a control of the stock,
being president thereof. From September, 1913, to Febru-
ary, 1918, defendant was vice-president, director, and
either manager or assistant manager of the company.
Frequently during that time Schuman was absent from
the Territory for periods of considerable length during
which the entire management fell upon defendant. From
the evidence it appears that, during defendant's connec-
tion with the business, he was not, like an ordinary clerk
or employee, paid wages or salary at regular, stated in-
tervals, but his account in the company's books was
monthly credited with salary and dividends earned, and
debited from time to time with cash withdrawn, cash
paid out for his account and for sundry goods purchased
by defendant from the company. Defendant himself tes-
tified that he never drew any regular salary and, in an-
swer to a question put to him by his attorney as to
whether, when he made withdrawals of money from the
company, he would indicate to the person paying him
what the cash was for, defendant answered, "No, I just
simply would ask the cashier for an amount of money."
Such appears to have been the ordinary course of busi-
ness adopted by the parties and, as said in *Veiths* v.
*Hagge, supra*, "the entries being thus proved to have been
made 'in the ordinary course of business' were competent
evidence to prove the items," in other words, the evidence
in this case may be fairly said to support the inference
that such special course of dealing existed between the
parties in respect to this account as to render such en-
tries competent and for this reason we are not prepared
to say that the trial court erred in permitting the book
entries complained of to go to the jury.

There is, however, in this case another and stronger
reason for holding that the book entries showing the cash

transactions between the parties were properly admitted in evidence. As already stated the defendant, beside being vice-president and director of the corporation, occupied also the important position of either manager or assistant manager of the company, his duties including the right to hire and discharge bookkeepers, cashiers and other employees of the company. He signed checks for and accepted drafts on behalf of the company, had access to the books of account, laid out the policy as to how the bookkeeping should be conducted and exercised the duties usually pertaining to the management of a business corporation. Occupying, as he did, such a high office in the corporation, it may fairly be inferred that defendant was or should have been fully conversant with all of the affairs of the company and its financial condition. The evidence shows that he had access at all times to the books of the company and occasionally consulted the same. Defendant himself testified that he had seen his account many times before he left the company's employment, detailing one specific occasion upon which he says that he had looked up his account "to see how much I drew and how much I had coming to me;" and he admitted that he had never objected to any of the items charged against him, testifying "I have never denied that I drew down the debits here." Defendant, however, claims to have objected to the insufficiency of the amount credited to him by way of salary since April, 1917. Having failed to object to any of the items standing against him in said account, such failure to object may be deemed an admission by defendant of the correctness of such account. In *Bird* v. *Magowan et al.*, 43 Atl. (N. J.) 278, Magowan was one of the managing directors of a corporation in the hands of a receiver. Upon suit by the receiver, the ledger offered in evidence showed a large indebtedness by Magowan to the corporation. The court said, p. 279,

"The charges in this account were for all checks and notes which do not appear upon their face to be for the benefit of the company. In respect to them, Mr. Hayes, who kept the books, says that, when he did not know where to place the charge, he put it to the account of Frank A. Magowan. F. A. Magowan knew of the existence of this account, and sometimes, as Mr. Hayes says, would challenge its accuracy, but, except in some unimportant particulars, permitted it to stand unchanged. He never went over the accounts and indicated what items should have been charged to the expense of the corporation, and what were properly charged as his personal disbursements. The accounts, therefore, standing in this form, unchanged, are evidential as admissions. Standing as they did upon the books of the company, of which he should have had, and did have, knowledge, it was his duty to explain in what degree the charges do him an injustice." And to the same effect see *Spellman* v. *Muehlfeld,* 166 N. Y. 245.

But even if the books of the company were, strictly speaking, inadmissible to prove cash transactions between the parties, we are of the opinion that under the facts and circumstances of this case their admission in evidence constituted no such error as warrants the granting of a new trial for, notwithstanding the exceptions to their admission by counsel, the record clearly indicates that neither counsel nor defendant have ever seriously contended that the books were incorrect and did not contain an accurate statement of the account between the respective parties. The record discloses that the attitude of defendant was not that he had been improperly charged with the cash items contained in the books of account, but that he had not been credited with all of the dividends to which he was entitled, and that, furthermore, he was entitled to be credited with a larger amount by way of salary

than had been credited to him on the books. That this was the attitude of defendant is clear from his own testimony in which he admitted that he had never objected to any of the items charged against him. Furthermore, after the close of plaintiff's case, counsel for defendant in his opening address to the jury plainly and in no uncertain terms stated to the jury the issues involved in the case and the verdict that defendant deemed himself entitled to. In his opening remarks counsel told the jury, "Under the law of this case as fixed by the court, gentlemen of the jury, we are not going to attempt, as a part of our case, to go into any of the items contained in the bill of particulars up to April, 1917, except this, that as to dividends we dispute the bill of particulars and claim a credit, and in that regard I will now state to you what we expect to prove. Bearing in mind, gentlemen of the jury, that we are not going down through 1915 as to credits nor debits; 1916 as to credits or debits; and not in respect to 1917, credits nor debits prior to April, 1917, when for the first time an entry of $400 crediting Mr. Paxson for salary, except as to dividends, and that, you can readily appreciate will considerably shorten the issues involved in this case,—I know at the present time and have no mental reservations as to that; if anything should crop up that I have missed, I will call it to the attention of the jury, any credit that I have overlooked which we should be entitled to; but at the present time my theory of the case is that we will not attempt, except as to dividends, to dispute any of the items contained in the bill of particulars prior to April 1917." Counsel then proceeded to tell the jury that, in regard to dividends earned by the stock owned by defendant, plaintiff had not given defendant credit for the full amount to which he was entitled and that for such dividends not credited defendant was entitled to the sum of $1790.

Counsel then stated to the jury that, in addition to the amount claimed for noncredited dividends, defendant was also entitled to the sum of $2900, which represented the difference between the salary of $250 per month credited to him by plaintiff from April, 1917, up to January, 1918, and the sum of $550 per month which amount defendant claimed was what his services were reasonably worth during that period, ending his opening statement to the jury in the following language: "So that we ask, and our offer of proof is in respect to the difference as far as the plaintiff is concerned, to give plaintiff a verdict for the amount claimed of $2254.08, less $1790, and give us a verdict, gentlemen of the jury, on our counter-claim and set-off for the excess of salary that we are entitled to from April 1917, down to the 21st day of January, 1918, in the amount of $2900."

The verdict shows that the jury took counsel at his word for it allowed in toto the claim of plaintiff and disallowed the counter-claim of defendant. To the allowance of the claim of plaintiff, defendant in the light of all the record cannot now complain and the verdict of the jury must be sustained unless we shall find from the evidence that defendant was entitled to and should have received at the hands of the jury a judgment for the sum demanded by him by way of counter-claim. In other words, by counsel's own statement, the issue presented to the jury was not whether the items charged by plaintiff to defendant in its bill of particulars were correct, for that was admitted, but the only issue was whether defendant was entitled to recover certain sums alleged to be due for uncredited dividends and salary. For these reasons, therefore, even if the book entries complained of were erroneously received to substantiate plaintiff's claim (which we think is not the case), we are of the opinion that such error was cured by the subsequent action of defendant

and his counsel as above indicated and the exceptions in this respect are overruled.

It now becomes necessary to determine whether from the evidence the jury was warranted in finding against the counter-claim of defendant.

As to dividends—as already stated, counsel in his opening address to the jury claimed that defendant was entitled to a credit in the sum of $1790 for dividends with which the plaintiff corporation had failed to credit him. Neither in oral argument nor in his brief has defendant pressed this claim and it might be inferred that he has abandoned it.   Be that as it may, that contention was left to the jury which found against it.   With the finding of the jury, from the state of the evidence, we are unable to interfere.

It is earnestly contended by defendant that the evidence showed and the jury should have found that defendant was entitled to recover from plaintiff the sum of $2900 as and for the reasonable value of his services from April, 1917, to January, 1918.

The evidence of defendant in support of his claim is substantially as follows:   During the year 1913, G. A. Schuman, president of the plaintiff corporation, and defendant entered into oral negotiations which finally resulted in defendant's entering on September 1, 1913, into the service of the plaintiff corporation in the capacity of either manager or assistant manager.   Under the arrangement made between Schuman and defendant, defendant purchased from Schuman $8000 of the stock of the corporation, which was equal to one-fifth of the capital stock, practically all of the remainder of the stock being owned and controlled by Schuman.   As to what defendant's compensation should be, according to defendant the agreement was that at the beginning he should receive a monthly salary of $250 which should be readjusted from

time to time as the conditions of the business warranted. That in addition to the stipulated salary, defendant was to receive 10% of the net profits accruing from the sale of mules in which business Schuman was engaged on his own account and not in connection with the plaintiff corporation. According to defendant the reason that his salary was placed at so low a figure as $250 per month was that Schuman represented to him that he (Schuman) was himself taking but a small salary from the business and the less that was paid out in salaries the more would be coming to both Schuman and defendant in dividends.

This agreement between Schuman and defendant was not at first reduced to writing but, on March 14, 1914, following, an agreement in writing was entered into between Schuman and defendant which recited that Schuman had sold to defendant 80 shares of stock in the plaintiff corporation for $8000, being the par value of said stock; that Schuman had been instrumental in employing defendant as assistant manager of the corporation. Defendant covenanted to devote all of his time, skill, energy and ability to the business of the corporation for a period of five years from September 1, 1913, and that should defendant at any time before the end of five years, of his own free will, decide to leave the employ of the company he would resell the 80 shares of stock to Schuman. The agreement contained no mention as to what the salary of defendant should be.

Up to the month of April, 1917, defendant was credited on the books of the corporation with a monthly salary of $250. In April, 1917, defendant discovering that Schuman, who had hitherto been drawing a salary of $200 per month, had increased his salary to $500 per month, ordered the bookkeeper to thereafter credit defendant with a monthly salary of $400, which was thereafter done for three months. According to defendant, when Schuman

found that defendant was being credited with the increased salary, he came to defendant much excited and asked why the increase had been made. Defendant replied that "you have raised your own salary, why should I not raise mine" or words to that effect. Schuman asked defendant if he did not think that it was worth $500 to run a business of that nature and defendant replied that it was, and that was why he had raised his own salary. After some further talk Schuman said that both salaries should be put back to the original figure and that at the end of the year after seeing how the business had prospered "we fix it up." The salary of defendant was put back to the rate of $250, defendant's account being debited with $450, the amount credited defendant in excess for three months. Defendant's testimony is to the effect that he was not satisfied with this arrangement but owing to Schuman's controlling the majority of the stock he was compelled to accede, on the understanding that the matter of a proper salary for him should be adjusted at the end of the year. During defendant's connection with the company the business increased from a turnover in 1913 of about $350,000 to about $1,500,000 in 1917. In January, 1918, defendant sold his stock in the company, which had been increased by a stock dividend of 120 shares and now amounted to 200 shares, to Schuman for $20,000. It was also agreed at that time that defendant should continue in the employ of the company at a monthly salary of $550. This arrangement lasted only for a little more than a month, when Schuman and defendant quarreled and defendant left the employ of the company.

It was the contention of defendant that under the agreement between the parties it was not understood that he should work the whole five years at a salary of $250 per month, and that when the agreement was reduced to writing, the amount of salary was for that reason left

unmentioned. For that reason defendant contends that although he had acquiesced in the salary of $250 per month allowed him up to April, 1913, any agreement that may have existed between the parties to that effect was terminated at that date by reason of defendant's expressing disagreement to the salary allowed him, hence from April, 1917, to January, 1919, defendant was entitled to recover for his services what they were reasonably worth. Several of his witnesses testified that in their opinion the services of defendant were reasonably worth $550 or more per month.

In opposition to the evidence on behalf of defendant, Schuman testified in effect for the plaintiff that the agreement between himself and defendant was that defendant should enter into the employment of plaintiff for a term of five years at a salary of $250 per month, which salary was to be for the full term of five years; that the reason that the salary was set at this apparently low figure was that Schuman had sold to defendant 80 shares of stock in the corporation at a price which was considerably less than the actual value of the same; and that at no time had the agreement as to the compensation of defendant been in any manner modified or changed.

At the request of defendant, the trial court instructed the jury that "if you find from the evidence that the defendant entered the employ of the plaintiff at a salary subsequently to be adjusted by mutual consent of the parties and that in April, 1917, the parties failed to agree as to what the salary of the defendant then and thereafter should be, and defendant, with the consent of the plaintiff, continued in the employ of the plaintiff with no mutual agreement as to a specific salary and so continued until the 17th of January, 1918, then the defendant is entitled to have and receive from plaintiff for the month of April and the succeeding months of 1917 and until

January 17, 1918, such sum as his services were reasonably worth."

The issues involved in the case were thus squarely presented to the jury. From the evidence adduced the jury might well have found in favor of the defendant's claim and such finding could not have been disturbed by this court; on the other hand, the evidence adduced was equally susceptible of supporting a verdict in favor of plaintiff and the jury, as the sole judge of the facts, having found in favor of plaintiff the verdict must stand.

The only remaining exception that requires notice is that directed to the refusal of the trial court to allow the witness Boyer to testify as to the reasonable value of the services of defendant.

Several witnesses were permitted to and did testify that in their opinion the services of defendant were reasonably worth more than $550 per month. The court's refusal to allow Boyer to testify in this regard was based on the lack of a sufficient showing of the qualifications of the witness as an expert in the line of business involved, and we are not prepared to say that the trial court erred in this respect. Moreover, the whole record discloses that the main issues between the parties were, first: Did the agreement between the parties contemplate, as contended by plaintiff, that defendant should work for plaintiff for the term of five years at a definitely fixed salary of $250 per month, and, if such was the agreement of the parties, was that agreement at any time thereafter modified or changed? second: Was it the agreement between the parties, as contended by defendant, that defendant should enter the employ of plaintiff for the term of five years but that, under the agreement, the salary to be paid defendant was not definitely fixed, as claimed by plaintiff, but was left to be adjusted from time to time

by mutual consent of the parties as the conditions of the business might warrant?

If the jury had found from the evidence that the contention of defendant was correct and that no fixed salary had been definitely agreed upon by the parties, the question of what the services of defendant were reasonably worth would have become highly pertinent and the exclusion of proper evidence in regard thereto might perhaps have been erroneous. The verdict of the jury, however, obviously indicates that the jury found from the evidence that the agreement between the parties was such as was contended for by the plaintiff, and that being the case, evidence as to what the services of defendant were reasonably worth was immaterial and its exclusion harmless.

We have carefully examined all the remaining exceptions and find them without merit. The exceptions are overruled.

*A. Withington* (*Robertson & Castle* on the briefs) for plaintiff.

*U. E. Wild* (*Smith & Wild* on the briefs) for defendant.